# BEN HOLLINGER *v.* JONAH KUMALAE.

## No. 1271.

# BEN HOLLINGER *v.* MANUEL C. PACHECO.

## No. 1272.

RESERVED QUESTIONS FROM CIRCUIT JUDGE FIRST CIRCUIT.

HON. C. S. FRANKLIN, JUDGE.

ARGUED NOVEMBER 18, 19, 1920.          DECIDED DECEMBER 10, 1920.

COKE, C. J. KEMP AND EDINGS, JJ.

STATUTES—*construction—meaning of language.*

It is a general rule that language used in a statute or constitution must be presumed to have been used in its known and ordinary significance unless that sense be repelled by the context.

SAME—*same—meaning of phrase "office of the Territory of Hawaii."*

In its known and ordinary significance the phrase "office of the Territory of Hawaii" does not include offices purely local or municipal, but includes only such offices as were created for the purpose of carrying on the business of the territorial government.

SAME—*same—disqualification .of citizen for election to office.*

Statutes providing for disqualification of citizens for election to office are construed strictly and will not be extended to cases not clearly within their scope.

OFFICERS—*election of officer to another vacates first, when.*

The acceptance of an office by one already holding another, where the holding of the two offices by one person at the same time has been prohibited by law or the two offices are incompatible at common law, automatically vacates the first office held.

SAME—*election of officer to another does not vacate first, when.*

If the law does not forbid the holding of the two particular offices by one person at the same time and they are not incompatible at common law the acceptance of the second does not vacate the first and the person so elected could legally hold them both at the same time.

SAME—*acceptance by legislator of office of supervisor of City and County of Honolulu, effect of.*

Section 17 of the Organic Act prohibits any person holding

office "in or under or by authority of the government of * * * the Territory of Hawaii" from holding the position of a member of the legislature while holding said office. Held, that the office of supervisor of the City and County of Honolulu is an office by authority of the government of the Territory of Hawaii and therefore the acceptance of the office of supervisor by a member of the legislature automatically vacated the office of member of the legislature.

OPINION OF THE COURT BY KEMP, J.

Proceedings in quo warranto were instituted in the circuit court by Ben Hollinger to oust the respondents Jonah Kumalae and Manuel C. Pacheco from the office of supervisor of the City and County of Honolulu. Separate proceedings were instituted against each respondent but since the title of each is challenged upon the same grounds both causes were considered together in the circuit court and have by stipulation of parties with the approval of this court been briefed and argued together in this court and will be disposed of in one opinion. So much of the agreed statement of facts in the Kumalae case as is necessary to an understanding of the discussion follows:

"That Jonah Kumalae, respondent above named, was duly elected a member of the house of representatives of the Territory of Hawaii from the fifth representative district on the 5th day of November, 1918, to serve for a period of two years, and duly qualified and took part as a member of said house in the regular session held in Honolulu from February 19, 1919, to April 30, 1919.

"That on the 3rd day of June, 1919, and while still a member of the said house of representatives, said respondent Jonah Kumalae was elected a supervisor of the City and County of Honolulu, to serve for a period of four and a half years from the 1st day of July, 1919, and on said 1st day of July, 1919, undertook and entered upon the duties of said supervisor and has been acting as a supervisor of said City and County since said date.

"That since such election as such supervisor there has been no session of the legislature of the Territory of

Hawaii, said respondent has not acted as a member of the house of representatives of the Territory of Hawaii, and does not now claim the position of a member of the house of representatives of the Territory of Hawaii."

In the Pacheco case the agreed facts are the same except it is there agreed that he was duly elected a member of the senate of the Territory of Hawaii from the third senatorial district on the 7th day of November, 1916, to serve for a period of four years, and duly qualified and took part as a member of said senate in the regular session held in Honolulu from February 21, 1917, to May 2, 1917, and the special session thereof held in Honolulu from May 14, 1918, to May 31, 1918, and the regular session thereof held from February 19, 1919, to April 30, 1919.

The circuit judge at the request of parties reserved to this court in the Kumalae case the following question:

"Was respondent, on the 3rd day of June, 1919, disqualified for election as a member of the board of supervisors of the City and County of Honolulu by reason of his being a member of the House of Representatives of the Territory of Hawaii?"

In the Pacheco case the same question was reserved with the exception that the word "senate" is substituted for the words "house of representatives."

An answer to the questions reserved requires a consideration of section 16 of the Organic Act of the Territory of Hawaii which reads as follows:

"That no member of the legislature shall, during the term for which he is elected, be appointed or elected to any office of the Territory of Hawaii."

It must be apparent that the question of primary importance for us to determine is whether the office of supervisor of the City and County of Honolulu is an "office of

the Territory of Hawaii" in the sense in which that phrase is used in the section of the Organic Act just quoted. If it should be determined that such office is an "office of the Territory of Hawaii" it would require no argument to show that respondents were disqualified for election to the office of supervisor and could not now hold such office and our answer to the reserved questions would be in the affirmative. On the other hand if it should be determined that such office is not an "office of the Territory of Hawaii" it would follow that they were not by the terms of said section disqualified for such election and our answer would be in the negative unless there are other provisions of law rendering them disqualified.

. Many cases have arisen upon constitutional or statutory provisions employing language somewhat similar to that used in our Organic Act above quoted but we have found none which deals with exactly the language here employed. The nearest approach to the phrase "office of the Territory of Hawaii," used in section 16, to which our attention has been directed, is the phrase "officer of the commonwealth," used in the constitution of Massachusetts, providing that "the senate shall be a court with full authority to hear and determine all impeachments made by the house of representatives against any officer or officers of the commonwealth." And it was there held that the various officers of cities and towns are not officers of the commonwealth in the sense in which that term is used in the constitution. Opinion of the Justices, 167 Mass. 599, 46 N. E. 118. Of course one to be an "officer of the commonwealth" would have to hold an "office of the commonwealth." So the holding is in effect that the various city and town offices are not "offices of the commonwealth." Another near approach to the language used in the Organic Act is found in a Texas statute con-

ferring authority upon the supreme court of Texas to grant writs of mandamus against certain officers as an original proceeding.    The statute provides that the supreme court may issue writs of "mandamus against any district judge or officer of the state government except the governor of the State."    When called' upon to grant a writ of mandamus against a county treasurer under the statute the court held that the county treasurer is not an officer of the state government and refused to take jurisdiction.  *Travis Co.* v. *Jourdan,* 91 Tex. 217.    For a like holding, where the writ was asked against a county judge, see *Turner* v. *Cotton,* 57 S. W. (Tex.) 35.    In *People* v. *Evans,* 247 Ill. 547, 555, it was held that the members of the miners' examining board are not "state officers," the court saying:    "The members of such miners' examining boards are appointed for and perform their duties in the counties wherein they are appointed. and have no jurisdiction to act outside of the county in which they are appointed.  In general it may be said that a state officer is one whose duties and powers are co-extensive with the state, while a county officer is one whose duties and powers are coextensive with the county (*State* v. *Burnes,* 38 Fla. 367) and the fact that the official acts of an officer are so far extraterritorial that they are binding throughout the state does not make the officer who performs such acts necessarily a state officer."    In *State ex rel Murphy* v. *Townsend,* 79 S. W. (Ark.) 782, it was held that the office of town recorder though requiring the incumbent to exercise the duties of the mayor in his absence, including duties of a judicial character vested in the mayor by the legislature, is not a state office nor the incumbent a state officer within the meaning of the con-stitution forbidding any state officer to hold more than one such office at the same time.    The court said: "Muni-cipalities are organized by statute under constitutional

authority, and in case of corporation courts,—mayors' courts, for instance, which are occasionally held by the recorder as we have seen,—the law confers upon them by statute the jurisdiction of justices of the peace. Still this officer is appointed by the municipal authorities and is removable by the same tribunal. He is therefore not a state officer in the sense of the constitutional provisions prohibiting one person to hold two offices at one and the same time."

In *Britton* v *Steber,* 62 Mo. 370, the opinion turned on the question of the finality of the decision of the appellate court of St. Louis County in a case involving the title to the office of mayor. The supreme court of Missouri has appellate jurisdiction to review the decisions of the appellate court where the title to an office "under the State" is brought in contest. The jurisdiction of the supreme court was invoked to review the decision of the appellate court of St. Louis County in a case involving the title to the office of mayor. In refusing to assume jurisdiction the court said: "There is a recognized distinction between state officers whose duties concern the state at large or the general public, although exercised within defined territorial limits, and municipal officers whose functions relate exclusively to the particular municipality. (Dillon Mun. Corp. Sec. 33.) A state officer may be connected with some of the municipal functions but he must derive his power from a state statute and execute his power in obedience to a state law. (*State* v. *Valle,* 41 Mo. 29.) Whilst it is true that the state grants the charter under which a city is organized and acts yet those elected in obedience to that charter perform strictly municipal functions and do not act in obedience to state laws in the manner enjoined upon such officers." In *Waldo* v. *Wallace,* 12 Ind. 569, it is held to be the settled law of that state that the mayor of a city when acting as such is not

a "state officer" but that when the common council fails to order the election of a city judge, as it is authorized to do under the statute, the mayor is required to hold a city court which has within the limits of the city the jurisdiction and powers of a justice of the peace in all matters, civil and criminal, arising under the laws of the state and for crimes and misdemeanors its jurisdiction is made coextensive with the county in which the city is situated. It was accordingly held that the mayor of a city, the common council of which had failed to order the election of a city judge, was in his capacity as city judge (not as mayor) a judicial officer and therefore ineligible to the office of sheriff under a constitutional provision which provides that "No person elected to any judicial office shall during the term for which he shall have been elected be eligible to any office of trust or profit under the state other than a judicial office."

In *State ex rel Platt* v. *Kirk,* 44 Ind. 401, the respondent Kirk who held the office of prison director was elected councilman of the city of Madison and qualified and entered upon the discharge of the duties thereof. The general assembly thereupon elected the relator Platt to the position of prison director which it considered the respondent Kirk had vacated by accepting the office of councilman, the state constitution providing "nor shall any person hold more than one lucrative office at the same time." Kirk refused to vacate the office of prison director and the state on the relation of Platt brought proceedings by quo warranto against him to inquire by what right he held that office. The court having held that the clause of the constitution above quoted applied only to lucrative state offices necessarily inquired into the character of the office of councilman; that is, whether it was a state office or otherwise, and upon this question the court held that the office of councilman in a city is an

office purely and wholly municipal in its character and that such officer has no duties to perform under the general laws of the state; that the board of councilmen have the power to enact by-laws and do such other acts and perform such other duties as pertain to their office in the municipality but that the powers and duties of councilman are beyond and in addition to any acts, powers and duties performed by the officers provided for under the state government. It was therefore held that while the office of councilman in a city is a lucrative office in the ordinary sense of the word it is not a lucrative office within the section of the constitution quoted and the judgment was therefore in favor of the respondent.

In *Santo* v. *Iowa,* 2 Ia. 164, 220, no such language as we are considering was involved but the decision is nevertheless instructive. The Iowa statute conferred upon the mayor of the City of Keokuk the jurisdiction of a justice of the peace under the criminal laws of the state and made him a justice of the peace in substance although not calling him such in terms. The defendants having been convicted of a criminal offense in the trial before the mayor, acting in his capacity as justice of the peace, on appeal raised the question of the legal authority of the mayor to entertain the cause and challenged the constitutionality of the statute which conferred jurisdiction on the mayor. The objection was that the mayor is an executive officer and that judicial authority is conferred upon him in conflict with that provision of the constitution which says that no person charged with the exercise of power properly belonging to one of these departments —the executive, legislative or judicial—shall exercise any functions appertaining to either of the others. The court held however that the departments referred to in the constitution were the departments of the state government of the state of Iowa and that whatever executive

offices the mayor may perform pertain to him only as an officer of the city corporation of which he is mayor but exercise none of the functions belonging to a state department; thus in effect holding 'that the mayor of Keokuk is not a state officer but merely an officer of the corporation.

In *Attorney General ex rel Wilkins* v. *Connors,* 9 So. 7, it appears that the relator Wilkins was elected sheriff of Escambia County, Florida, in which is situated the city of Pensacola. At the time of his election the statute of that state provided that "it shall be the duty of the sheriff of the county in which such city shall be situated to perform the duties of marshal for such provisional municipality, and to appoint subject to the approval and removal by the board such number of policemen as may be authorized by the board." It further appeared that notwithstanding said provision the respondent had assumed to be, and exercised the powers and duties of, the chief of police force of said provisional municipality and as such exercised powers and duties which appertain to the office of marshal. It was contended for the respondent that the statute above quoted is obnoxious to that provision of the state constitution which provides that "No person shall hold or perform the functions of more than one office under the government of this state at the same time." And in this connection it was urged for the respondent that the city marshal is a state officer in the sense of the constitutional provision invoked and that to put the performance of the duties appertaining to his office upon a sheriff of a county (another state officer) comes within the constitutional inhibition above quoted. The supreme court of Florida, however, held that this inhibition was aimed solely and entirely against offices held under, or whose duties appertained to, the government of the state, and although hold-

ing the sheriff to be a state officer it was stated that "After careful and exhaustive search we have been unable to find any authority that holds that the government of municipalities forms any part of the government of the state, as such, considered in the broad sense of the term 'state government.' The government of the state, as such, is reared upon and provided for in all of its departments by the constitution, but nowhere in our constitution are the governments of municipalities, or their officials, either created or established as any part of the state government; but their very creation, together with all provisions for 'their government,' are reserved to the legislative branch of the state government, as erected by the constitution. Section 8, art. 8, of the constitution provides that 'the legislature shall have power to establish and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time.' From this provision it will be seen that to the legislature is reserved the power, not only to create, but to abolish, municipal governments. It could hardly be contended that our constitution intended to clothe the legislature with the power to wipe out of existence any part of the great frame-work of state government; yet such would be the inference were we to hold that the government of the municipalities formed, strictly speaking, any part of the government of the state." The provisions giving the legislature authority to establish municipalities and to provide for their government are very similar to the provisions of section 56 of our Organic Act and what that court has to say as to the effect of those provisions is therefore applicable here.

Other cases of like import could be cited but we do not consider it necessary to do so.

We will now notice the cases relied upon by the peti-

tioner as establishing his contention that the office of
supervisor of the City and County of Honolulu is an
office of the Territory of Hawaii.   Several Indiana cases
are relied upon, the oldest of which is *Creighton* v. *Piper*,
14 Ind. 182.  That was a case in which one Farras who pur-
ported to act as supervisor of a road district brought an
action against Piper before a justice of the peace to
recover a penalty for alleged obstruction of a public road.
The statute of Indiana provides that any person who
shall unnecessarily and to the hindrance of passengers
obstruct any highway shall forfeit the sum of five dollars
to be recovered before a justice of the peace in the name
of the township trustee by a supervisor of the district.
The constitution of Indiana declares that no person shall
hold more than one lucrative office at the same time.   It
was agreed in this case that Farras was duly elected
supervisor of the road district and pursuant to his elec-
tion he was duly qualified and acted as such supervisor
and that thereafter he was by the board of commission-
ers of said county appointed one of the trustees of Harri-
son township, accepted the appointment, qualified and
acted as such trustee and he continued up until the
commencement of this suit to exercise the several duties
of both supervisor and trustee.   It was held that both of
these offices were lucrative offices within the meaning of
the constitutional provision quoted, no reasons being
assigned for the holding.  The next Indiana case in point
of time is *Howard* v. *Shoemaker*, 35 Ind. 111, in which it
was held that the office of mayor of Jeffersonville, a city
incorporated under the general laws, is a lucrative office
within the meaning of the same constitutional provision
referred to in *Creighton* v. *Piper, supra,* for the reason
that he had duties to perform under the laws of the state
for which he could charge and collect fees aside from
those which are judicial and those of a purely municipal

character. If there exists any doubt after reading the decision that this is what controlled the finding of the court in that case we have only to read what the court had to say as to its reason for so holding in the later case of *State ex rel Platt* v. *Kirk,* which we have already reviewed, and in which it was held that this provision applied only to state offices. At page 406 the court said: "It was held by this court in *Howard* v. *Shoemaker, supra,* that the office of mayor of a city was a lucrative office within the meaning of the ninth section of article 2 of the constitution, not because he received a compensation for the discharge of such of his duties as were purely municipal in their character but for the reason that he had duties to perform under the laws of the state aside from those which are judicial and those of a purely municipal character, such as the taking and certifying of affidavits and depositions, the proof and acknowledgment of deeds and other instruments in writing for which he is entitled to and may charge and receive fees." The next Indiana case which we shall notice is that of *Chambers* v. *The State ex rel Bernard,* 127 Ind. 365. This was an action brought by the state on the relation of Bernard, prosecuting attorney, against Chambers to oust him from the office of school trustee of the school town of Newcastle and have the office declared vacant on the ground that after Chambers' election and qualification as such school trustee he was appointed, accepted and qualified as trustee for the institute for the education of the deaf and dumb. The court reviewed all the Indiana decisions to which we have referred and reaffirmed all of them, holding that the office of trustee of the institute for the education of the deaf and dumb and the office of school trustee are both lucrative offices within the meaning of the constitutional provision referred to, basing its decision upon the same grounds as are set forth in the earlier decision, namely,

that they have duties to perform under the general laws of the state.

In California it is held that the office of school superintendent of a county and the office of supervisor of a county come within the meaning of the phrase "civil office of profit under this State," used in the article of the state constitution which provides that "No person holding any lucrative office under the United States or any other power shall be eligible to any civil office of profit under this State" (*Crawford* v. *Dunbar,* 52 Cal. 36; *People* v. *Leonard,* 73 Cal. 230), but in neither case is there any pretense of a discussion of the question here involved. In fact the question does not appear to have been raised and the court apparently assumed, rather than held, that they were offices "under the State." It is also held in *Satterwhite* v. *Garrison,* 34 Cal. App. 734, that a deputy district attorney is the holder of an "office, trust or employment under this State," though generally known as a county officer, under a constitutional provision providing that no member of the legislature shall during the term for which he shall have been elected hold or accept any office, trust or employment under the State. This was held on the authority of the two California cases above cited and the court added: "We think these cases are not overruled by *Nicholl* v. *Koster,* 157 Cal. 416 (108 Pac. 302), which holds that probation officers are not 'officers of the state government,' the term 'officers of the state government' being evidently much more restricted and of narrower import than the clause of the constitution now under consideration."

In Pennsylvania it is held that the holding of the office of postmaster and county commissioner by one person at the same time is prohibited by the constitution of the state by the provision that "No member of Congress from this State nor any person holding or exercising any office

or appointment of trust or profit under the United States shall at the same time hold or exercise any office in this State to which a salary, fees or perquisites shall be attached." *DeTurk* v. *Commonwealth,* 129 Pa. 151. The constitutional provision above quoted is utterly unlike the provision found in our Organic Act and this decision is therefore of no value although the court did in the course of its opinion in the discussion of the question of whether the acceptance of one office vacated the other say: "In considering this question regard must be had to the fact that the former (postmaster) is an office under the government of the United States and the latter (county commissioner) an office under the state government."

In *State* v. *Moores,* 52 Neb. 770, it was held that the office of mayor of a metropolitan city in that state is an "office under the state." The following quotation from page 779 of the opinion in this case will suffice to show the holding of the court and the reasons therefor: "But the contention of respondent, if we correctly understand his counsel, is that the constitutional provision invoked by relator embraces merely state officers or 'offices under the state.' To so construe the fundamental law is to ignore not only the grammatical construction of the language used by the framers, but as well the plain and ordinary signification of the words. The duties of such officer are not merely municipal, but the law creating the position has imposed upon him many duties and functions which pertain to state affairs, and the enforcement of the general laws of the commonwealth, many instances of which are pointed out on page 10 of relator's brief, such as the mayor is made conservator of the peace, has the power to issue a *posse comitatus,* to order the suppression of riots and breaches of the peace, to remit fines and costs imposed by the police judge for offenses arising under the laws of the state, and, in cases of urgency or

necessity, to exercise the functions of an examining or committing magistrate. Such powers derived from a positive state statute, although also clothed with municipal functions, constitute the office of mayor of a metropolitan city an office under the state."

In *Truitt* v. *Collins,* 122 Md. 526, it is held that the holding of the office of supervisor of elections and the office of town councilman by one person at the same time is prohibited by article 55 of the declaration of rights which declares: "That no person shall hold at the same time more than one office of profit created by the constitution and laws of this State," etc. In that case it was contended that the position of town councilman is not an "office" within the meaning and intent of the above quoted article of the declaration of rights, but the court held that because the incumbent is required before entering upon his duties to take an oath of office the position is an "office," and further held that because the duties and the nature and extent of the powers of such councilman are conferred by law such office of councilman is an "office of profit" within the meaning of the article of the declaration of rights above quoted—that is, an "office of profit created by the constitution and laws of this State." Again we may say that the constitutional provision under consideration in that case is so utterly unlike the provision here under consideration as to render the decision without value to us. The Maryland case does not decide anything except that the office of councilman is an "office" and that it is "created" under the constitution and laws of the state.

Probably the best considered opinion relied upon by the petitioner is that in *Attorney General* v. *Detroit Common Council,* 112 Mich. 145. The constitution of Michigan provides that "No member of Congress nor any person holding office under the United States or this State

shall execute the office of Governor." The mayor of Detroit was elected to, accepted and entered upon the execution of the duties of the office of governor. He continued to perform the functions of both offices. The attorney general of the state brought a mandamus proceeding against the common council of the city of Detroit to compel it to call an election to fill a vacancy in the office of mayor. The petition proceeded upon the theory that by accepting the latter office that of mayor had become vacant and a writ of mandamus was asked to compel the respondent to call an election to fill such vacancy. The petitioner's theory was upheld and the writ ordered, the court holding that the mayor of Detroit came within the constitutional description of officers "holding office under the State." To this extent, if "office under the State" is equivalent to "office of the State," and nothing else appeared to differentiate this case from that and the other cases, it might be considered as supporting the petitioner's view in this case. But we think the cases may be differentiated on two grounds. First in order to support the holding that the office of mayor of Detroit comes within the constitutional description of officers holding "office under the State" and the holder thereof therefore prohibited from executing the office of governor the court pointed out that the mayor had under the Michigan statute many state duties to perform, such as conserving the peace, requiring persons to give security to keep the peace, conducting examination of persons charged with crime and committing them to jail or requiring a recognizance for appearance at the circuit court for trial; to admit persons charged with crime to bail; to issue proclamations requiring saloons to be closed upon election days; to call upon the commanding officer for aid from state troops in case of riot, breach of the peace, tumults or violent resistance of any

process of the state, etc., and held that an officer of a city whose duties are simply and purely municipal and who has no function pertaining to state affairs does not come within the constitutional description of officers "holding office under the state" but that officers of cities who are appointed or elected by the community in obedience to laws of the state which impose duties upon them in relation to state affairs as contradistinguished from affairs of interest to the city merely are upon a different footing and may properly be said to hold "office under the state."

Does the office of supervisor of the City and County of Honolulu come within this principle? The answer must be found in an examination of the charter of the City and County wherein the powers and duties of the supervisors are defined. Section 1654 R. L. 1915 and the various amendments thereof, consisting of twenty-seven separate paragraphs, contain the legislative grant of powers to, and the imposition of duties upon, the supervisors, and from a careful reading of this section as well as other sections of the charter we fail to find where they are vested with any powers of a general territorial nature or are given any territorial duties to perform. On the contrary it appears to us that every official act of the supervisors is of purely local application. They are charged with no such duties as those found by the Michigan case or the other cases reviewed to be state duties. Hence the basis of these decisions is lacking in this case. Then too, there is a marked difference between the term "office under the state" contained in the Michigan constitution, and the term "office of the Territory" contained in section 16 of our Organic Act. The term "office under the State" is a much more comprehensive term than "office of the Territory" and one might well be held to come within the description holding an office "under the State" and at the same time be held not to come within the

description of an "office of the State." This distinction is recognized by the California court in *Satterwhite* v. *Garrison, supra,* from which we quoted.

It must be apparent that the cases cited are not necessarily conclusive of the question before us which involves language somewhat different from the language construed by the various courts in these cases though we think that on the authority of the adjudicated cases alone we would be compelled to hold that the office of supervisor of the City and County of Honolulu is not an "office of the Territory of Hawaii."

It will be noted that not all of the cases considered were dealing with the question of eligibility to be elected to or hold an office but we think that none of them dealt with a constitutional or statutory provision which would require a stricter construction than the act involved in this case. It is a general rule that language used in a statute or constitution must be presumed to have been used in its known and ordinary significance unless that sense be repelled by the context. *Levy* v. *McCartee*, 31 U. S. 102, 110. Another well recognized rule is that statutes providing for disqualification of citizens for election to office are construed strictly and will not be extended to cases not clearly within their scope. 29 Cyc. 1380.

Unquestionably in its known and ordinary significance the phrase "office of the Territory of Hawaii" does not include offices purely local or municipal, but includes only such offices as were created for the purpose of carrying on the business of the territorial government. Unless, therefore, there is something in the context showing that Congress intended a different meaning we must hold that it intended the words used to be accepted in their known and ordinary significance. By the context is meant not only the sentence or section in which the words occur but

the whole body of the act. From an examination of the act in question it clearly appears that Congress was addressing itself to the task of providing a territorial form of government for the newly acquired Hawaiian Islands and did not go into the question of municipal government except to confer upon the territorial legislature by section 56 of the act the authority to "create counties and town and city municipalities within the Territory of Hawaii and to provide for the government thereof" and by an amendment enacted in 1905 provided that "all officials thereof shall be appointed or elected as the case may be in such manner as shall be provided by the governor and legislature of the Territory." From a view of the act as a whole we do not think there is anything to indicate that Congress intended the words "office of the Territory of Hawaii" to have any meaning other than their known and general meaning. From a closer view of some of the provisions of the Organic Act directly in connection with section 16 we think may be found confirmation of this view. Section 17 of the Organic Act provides: "That no person holding office in or under or by authority of the Government of the United States or of the Territory of Hawaii shall be eligible to election to the legislature, or to hold the position of a member of the same while holding said office." The language of this section is much more comprehensive in the description of those who shall be ineligible to election to the legislature and a holding that the incumbent of a municipal office is ineligible for election to the legislature under this provision would not imply that a member of the legislature is disqualified during the term for which he was elected for election to a municipal office.

Neither do we find any merit in petitioner's argument that because the general laws of Congress (Sec. 1854 U. S. R. S.), applicable to all territories then in existence,

provided that "No member of the legislative assembly of any Territory now organized shall hold or be appointed to any office which has been created or the salary or emoluments of which have been increased while he was a member, during the term for which he was elected and for one year after the expiration of such term" Congress must be presumed to have had in mind the prevention of the same mischief aimed at in this section and that since the legislature of which respondents were members increased the salary of supervisors of the City and County of Honolulu the section under consideration should be so construed as to prevent that mischief. It seems to us that this circumstance has the opposite effect from that contended for. By section 5 of the Organic Act it is provided that sections 1850 to 1890 U. S. R. S. shall not apply to the Territory of Hawaii and if Congress had intended the same effect it would undoubtedly have extended the general law to Hawaii or have used similar language to that used in the general law.

We think it is clear that Congress did not intend by section 16 to prescribe who should not be appointed or elected to any office purely municipal but by section 56 of the Organic Act left that to the territorial legislature. The territorial legislature evidently took that view of it and has by section 1667 R. L. 1915 prescribed what qualifications will make one eligible to fill any elective office created by the municipal charter of the City and County of Honolulu and have prescribed different qualifications from those required of officers of the Territory by the Organic Act, notably the provision to the effect that one must have been a duly qualified elector of the Territory and City and County for at least two years, while a member of the senate or house of representatives must have resided for at least three years in the Territory and be qualified to vote for representative in his district.

Sections 34 and 40 Organic Act. Other territorial officers are merely required to be citizens of the United States and of the Territory of Hawaii, the latter of which is acquired by one year's residence in the Territory.

Section 1668 R. L. 1915 provides that "No person shall hold more than one office at the same time except as herein provided" and petitioner's counsel contend that this section is violated and respondents cannot hold the office of supervisor. In this contention they overlook entirely the rule that by the acceptance of the second office (that of supervisor) the first (that of legislator) was automatically vacated providing the holding of the two offices by one person at the same time has been forbidden by law or the two offices are incompatible at common law. *Howard* v. *Harrington,* 114 Me. 443, 96 Atl. 769; 1917A L. R. A. 211 and note p. 225. The only exception to this rule is where the two offices held are under different governments, in which case inasmuch as the second government has no power to declare the office held under the first government vacant and is powerless to prevent the officer from exercising the office first held, it must content itself with refusing to permit him to have the office it does control. This has been applied in cases where one office was under a state government and the other under the Federal government.

It is likewise true that if the law does not forbid the holding of the two particular offices by one person at the same time for the reason that one is municipal and the other territorial and they are not incompatible at common law respondents could legally hold them both at the same time. But we are not left to a determination of the scope of section 1668 R. L. to ascertain that respondents are prohibited by law from holding the office of senator and representative while holding the office of supervisor, for section 17 of the Organic Act prohibits any person hold-

ing office "in or under or by authority of the government of * * * the Territory of Hawaii" from holding the position of a member of the legislature while holding said office. The office of supervisor of the City and County of Honolulu is without question an office by authority of the government of the Territory of Hawaii and the holding of the two particular offices by one person at the same time is therefore prohibited.

Applying the rule above announced we conclude that the acceptance by respondents of the office of supervisor automatically vacated the office of senator and representative respectively then held by them. There has therefore been no holding of two offices by one person at the same time.

And finally in answer to the argument of counsel for petitioner that this court ought to so construe the law as to bring this cause within its terms because it is against public policy for a member of the legislature after having taken part in the enactment of a law increasing the salary of an office and lengthening the term thereof to be eligible for election to that office during the term for which he was elected to serve in the legislature we have only to say that the way is open for the territorial legislature by an appropriate act to apply the remedy if in its opinion the practice is against public policy. But we as a court have no inclination to usurp the functions of the legislature, the duties imposed upon us as a court being quite as much as we are willing to assume.

Our conclusion is that the reserved questions should be and they are answered in the negative.

*E. J. Botts, P. L. Weaver* and *L. Andrews* (*Andrews, Pittman & O'Brien, E. J. Botts* and *P. L. Weaver* on the brief) for petitioner.

*I. M. Stainback* for respondents.