PHILIP HOWARD, Petitioner, *vs.* CHARLES M. HARRINGTON.

LUCIUS H. DUNCAN, Petitioner, *vs.* HERBERT W. KEEP.

Knox.    Opinion March 1, 1916.

*Acceptance of and Qualification for an Office Incompatible with one then held.      Defective Ballots.      Incompatible Offices.*
*Marking of Ballots.    Right of Pauper to Vote.*
*Test of Incompatibility.*

1.  The office of Mayor of Rockland and that of Judge of the police court of Rockland are incompatible, and cannot legally be held by the same person at the same time.
2.  If the mayor of a city is appointed to the office of Judge of the police or municipal court of the same city and accepts the latter office, he thereby vacates and resigns the office of mayor.
3.  If the holder of any office accepts another and incompatible office, he thereby vacates ipso facto the first office.
4.  If a person claiming to have been elected mayor of a city is, after the election, appointed to, and accepts, the incompatible office of Judge of the police court of the same city, he thereby vacates his right to the office of mayor, and has no further interest in it, and cannot maintain a petition under Revised Statutes, chapter 6, section 70, to determine whether he was elected.
5.  It is only when a petitioner under Revised Statutes, chapter 6, section 70, is entitled by law to hold the office claimed by him that an order may be issued to the party unlawfully claiming or holding the office to yield it up,
6.  Ballots on which the name "L. H. Duncan" is written are counted for Lucius H. Duncan.
7.  Where a voter placed a petitioner's sticker upon and partly covering the name of the respondent; and also wrote underneath the name of the petitioner in full, the ballot is counted for the petitioner.
8.  In a case where a voter made a cross in a dark space or square at the left of the open white square, above the party designation, the Justices are evenly divided in opinion on the question whether it should be counted; and, therefore, it is not counted.
9.  Upon the evidence the Justices are of opinion that the respondent Keep is entitled to three more ballots, and the petitioner, Duncan, to two less, than those presented to the court at the hearing, and that Keep was legally elected alderman.

10. Petitions under Revised Statutes, chapter 6, section 70, to determine the validity of elections cannot properly be reported to the Law Court for decision. They are to be heard and determined by a single Justice, from whose decision an appeal lies to all the Justices, as such, and not to the Law Court.

Petitions brought under provisions of Revised Statutes, chapter 6, section 70, to determine the results of the municipal election March, 1915, in the city of Rockland, so far as it concerns the election of mayor and one alderman. Case reported to Law Court on so much of the evidence as legally admissible.

Case stated in opinion.

*Philip Howard,* for petitioners.

*A. S. Littlefield,* for respondents.

SITTING: SAVAGE, C. J., SPEAR, CORNISH, KING, BIRD, HALEY, HANSON, PHILBROOK, JJ.

SAVAGE, C. J. These petitions are brought under the provisions of Revised Statutes, chapter 6, section 70, to determine the results of the election, March 1, 1915, in the city of Rockland, so far as concerns the mayor and one alderman.

I. THE HOWARD PETITION.

The petitioner and the respondent were both candidates for the office of mayor. The respondent was declared elected. The petitioner claims that a majority of the legal ballots were cast for him, but that the counting officers refused to count ballots, on the ground that they were defective, that should have been counted for him, and counted defective ballots for the respondent, which should not have been counted. The case is also concerned with some ballots which were cast by men who, it is claimed, were paupers, and so disqualified, and with the ballot of one man claimed to have been illegally registered. There is also a controversy as to the number of ballots actually cast for each party in Ward 1. The conclusion we have reached makes it unnecessary to consider any of these questions.

It is admitted that the petitioner was appointed Judge of the police court of Rockland by the Governor, March 17, 1915, that the appointment was confirmed, that a commission issued to him,

March 24, 1915, and that since then he has been legally holding that office and performing its duties. And the respondent sets up in his answer and now contends that the offices of Mayor of Rockland and of Judge of the police court of Rockland are incompatible, both under the constitution and at common law, and that the petitioner, even if elected mayor, vacated his election ipso facto by being appointed Judge of the police court and accepting that office. He therefore contends that the petitioner has now no right, title or interest in the office of mayor, and for that reason is not entitled to prosecute this petition.

It is well settled that one person cannot hold two incompatible offices, and that the acceptance of the later office vacates ipso facto the prior one. In this State, the question was first discussed in the Opinions of the Justices, 3 Maine, 484. It was there considered that the offices of sheriff and justice of the peace were incompatible, on the ground that sheriffs belong to the executive department of the State, and justices of the peace, to the judicial, and that for one person to hold both of these offices would be in violation of the Constitution, Art. III, sect. I, which provides that "no person or persons belonging to either of these departments [legislative, executive and judicial] shall exercise any of the powers belonging to either of the others, except in cases herein expressly directed or permitted." In *Bamford* v. *Melvin,* 7 Maine, 14, the offices of deputy sheriff and justice of the peace were held to be incompatible, for the reason given in 3 Maine, 484, supra. In *Stubbs* v. *Lee,* 64 Maine, 195, this court said: "Where one has two incompatible offices, both cannot be retained. The public has a right to know which is retained and which is surrendered. It should not be left to chance, or the uncertain and fluctuating whim of the office holder to determine. The general rule, therefore, that the acceptance of and qualification for an office incompatible with one then held is a resignation of the former, is one certain and reliable, as well as one indispensable for the protection of the public." And the court in that case held that an acceptance of the office of deputy sheriff was a surrender of the office of trial justice. See to same effect, *Pooler* v. *Reed,* 73 Maine, 129.

That the Judge of the police court of Rockland belongs to the judicial department of the State cannot be questioned. The court

was created under that provision of the Constitution, Art. VI, sect. 1, which declares that "the judicial power of the State shall be vested in a Supreme Judicial Court, and such other courts as the legislature shall from time to time establish." Whether a mayor of a city belongs to the executive department of the State we think is a question which need not now be expressly decided. It has been pointed out that a distinction may exist between a municipal officer whose functions relate exclusively to local concerns of the particular community, and one whom the law vests with powers and charges with duties which concern the general public. *Atty. Gen. ex. rel. Moreland* v. *Detroit,* 112 Mich., 145; 1 Dillon, Mun. Corp., sec. 58. In this State the duties of a mayor are not limited to the performance of mere municipal functions, and attending to the municipal business. As will be seen hereafter, he is charged by the public statutes with certain duties which concern the public interest. He is required specially to enforce certain criminal statutes enacted for the general public good, and which are a part of the general machinery adopted to suppress crime and promote the public well being. We think there is much ground for holding that he is a part of the executive department of the State, within the meaning of the Constitution. But it is unnecessary in this case to decide that question. We prefer to place our decision upon another ground.

The answer to the question before us does not necessarily depend upon constitutional or statutory provisions. The doctrine of the incompatibility of offices is bedded in the common law, and is of great antiquity. At common law two offices whose functions are inconsistent are regarded as incompatible. The debatable question is, what constitutes incompatibility? This question has been answered by the courts with varying language, but generally with the same sense. We cite a few examples. "Two offices are incompatible when the holder cannot in every instance discharge the duties of each. The acceptance of the second office, therefore, vacates the first." The *King* v. *Tizzard,* 9 B. & C., 418. This language is cited with approval by this court in *Stubbs* v. *Lee,* supra. "Incompatibility must be such as arises from the nature of the duties, in view of the relation of the two offices to each other." *Bryan* v. *Cattell,* 15 Iowa, 535. "Incompatibility arises where the

nature and duties of the two offices are such as to render it improper, from considerations of public policy, for one person to retain both." *Abry* v. *Gray*, 58 Kan., 148. "Incompatibility between two offices exists when there is an inconsistency in the functions of the two." *People, ex rel. Ryan* v. *Greene*, 58 N. Y., 295. "The functions of the two must be inconsistent, as where an antagonism would result in the attempt by one person to discharge the duties of both offices." *Kenney* v. *Georgen*, 36 Minn., 190. "The test of incompatibility is the character and relation of the offices, as where the function of the two offices are inherently inconsistent and repugnant." *State* v. *Goff*, 15 R. I., 505. "The true test is whether the two offices are incompatible in their natures, in the rights, duties or obligations connected with or flowing out of them." *State ex. rel. Clawson* v. *Thompson*, 20 N. J. Law, 689. The foregoing cases may also be cited in support of the doctrine that acceptances of the later of two incompatible offices vacates the former. See also *Cotton* v. *Phillips*, 56 N. H., 220; *People* v. *Carrigan*, 2 Hill, 93; *Van Orsdale* v. *Hazard*, 3 Hill, 243; *Magie* v. *Stoddard*, 25 Conn., 565; 3 Com. Dig. Tit. Officer (K. 5.) Mechem on Public Officers, sect. 420. An office holder is not at common law ineligible to appointment or election to another and incompatible office, but the acceptance of the latter vacates the former.

Now to apply these principles to the present case. The police court of Rockland has a civil and a criminal jurisdiction. It has exclusive jurisdiction under its charter over all such offences committed within the limits of the city of Rockland, as are cognizable by trial justices. P. & S. Laws of 1909, ch. 368. It has jurisdiction of violations of any statute where the offense is not of a high and aggravated nature. R. S. ch. 133, sect. 4. It has exclusive jurisdiction of all offenses against the ordinances and by-laws of the city of Rockland. P. & S. Laws, 1903, ch. 114, sect. 3. It has jurisdiction of all offenses against the prohibitory liquor statute, except for keeping drinking houses and tippling shops and for being common sellers of intoxicating liquor. R. S., ch. 29, sect. 60. It may, on complaint, cause to be arrested all persons charged with felonies, offenses and misdemeanors, and when an offense is found to be one not within its jurisdiction for trial, it may cause the

offender to recognize with sufficient sureties to appear before the supreme judicial court. R. S., ch. 133, sect. 5.

The charter of the city of Rockland, P. & S. Laws, 1905, ch. 122, provides as follows: Sect. 3. "The mayor of said city shall be the chief executive officer thereof; it shall be his duty to be vigilant and active in causing the laws and regulations of the city to be executed and enforced; to exercise a general supervision over the conduct of all subordinate officers, and cause neglect of violations of duty to be punished."

Sect. 5. "The executive powers of said city generally, and the administration of police and health departments . . . shall be vested in the mayor and aldermen."

The statutes of this State, ch. 29, sect. 15, provide that the mayor and aldermen . . . in every city . . . shall make complaint and prosecute all violations of the chapter, [the prohibitory liquor law] and promptly enforce the laws against drinking houses. For wilful neglect or refusal, after being furnished with written notice of a violation signed by two persons competent to be witnesses in civil suits, containing the names and residences of the witnesses to prove the offence, to institute proceedings therefor, he shall be fined not less than twenty nor more than fifty dollars."

The municipal officers, of whom the mayor is one, R. S., ch. 1, sect. 6, par. XXV, are specially required by statute promptly to enforce the laws against houses of ill-fame, R. S., ch. 125, sect. 9, and against gambling rooms, R. S., ch. 126, sect. 1, and in each case "to make complaint against any person within their respective municipalities, where there is probable cause to believe such person guilty of a violation" of the statute. It is made the duty of the mayor "forthwith to proceed to sue" for an election bet or wager made, as soon as he has the proper evidence, R. S., ch. 6, sect. 97. We think it is unnecessary to go further in this direction.

In many instances in the statutes the mayor, either alone, or as one of the municipal officers, is charged with the performance of duties, and for neglect or refusal to perform the same is made liable to fine or forfeiture, criminally or civilly. And the police court of Rockland has exclusive jurisdiction upon complaint to try the mayor for such neglect or refusal in some classes of cases, and may hold the offender for the Supreme Judicial Court in others.

And where the forfeiture is recoverable in an action at law, it likewise has jurisdiction, sometimes exclusive. See R. S., ch. 4, sects. 53, 57, 112; ch. 6, sect. 98; ch. 23, sect. 92; ch. 28, sects. 42, 46, 53; ch. 44, sect. 5; ch. 124, sect. 11; ch. 128, sect. 10. It needs no argument to show that the mayor cannot be respondent and Judge of the police court at the same time. If he is Judge he cannot be prosecuted in that court for his defaults as mayor, nor anywhere else in cases within the exclusive jurisdiction of that court.

Discussion cannot make the situation clearer. As mayor it would be the duty of the petitioner to prosecute certain classes of offenses, if any have been committed, in the police court. As Judge of the police court it is his duty to hear and determine complaints for offenses which come within these classes. He cannot do both. He cannot be both prosecutor and Judge. The duties are repugnant. He can only perform the duties of one office by neglecting to perform the duties of the other. It is not for him to say in a particular instance which he will perform and which he will not. The public has a right to know with certainty. *Stubbs* v. *Lee,* supra. Thence it is that two such offices must be held to be incompatible. And we are all of opinion that when one who has the office of mayor of Rockland, or one who has the right of office, accepts the incompatible office of Judge of the police court, he thereby abandons, surrenders and vacates ipso facto, such election, or right of election, as he had to the office of mayor.

Since the petitioner has vacated and surrendered his right to the office of mayor, we think that he cannot maintain this petition. The ultimate purpose of the petition is to oust the respondent, by showing that the petitioner is entitled to the office. And it is only when a petitioner "is entitled by law to the office claimed by him," R. S., ch. 6, sect. 71, that the Justice hearing the case may issue an order to the party unlawfully claiming or holding said office, commanding him to yield up said office to the officer who has been adjudged to be lawfully entitled thereto. Sect. 73. The petitioner has now no interest in the proceeding. *Heald* v. *Payson,* 110 Maine, 204; *Libby* v. *English,* 110 Maine, 449; *Murray* v. *Waite,* 113 Maine, 485.

II. THE DUNCAN PETITION.

The petitioner and the respondent were both candidates for the office of alderman in Ward 1, and the respondent was declared elected.

At the hearing, it was agreed that each had received an equal number of the ballots before the court. This included four disputed ballots, three for the petitioner and one for the respondent. The total number is not stated in the record. In one case the voter made a X in a dark space or square at the left of the open, white square, above the party designation, within which latter square it is claimed was the appropriate place to mark, thus:

REPUBLICAN          DEMOCRAT

Upon the question whether this ballot should be counted for the respondent, the Justices are evenly divided in opinion. Therefore it cannot be counted.

On two ballots the voters erased the name of the respondent, and wrote underneath "L. H. Duncan." Under the rule laid down in *Bartlett* v *McIntire,* 108 Maine, 161, we think these ballots should be counted for the petitioner.

On one ballot the voter placed a petitioner's sticker upon and partly covering the name of the respondent. He also wrote underneath the name of the petitioner in full. We think under the rule in *Crosby* v. *Libby,* 114 Maine, 35, this ballot should be counted for the petitioner. Upon the ballots before us, then, the petitioner holds the three disputed ballots already counted for him in the tie vote, and the respondent loses one, which so far gives the petitioner one majority.

However, another question is presented. There is evidence offered by the respondent that at the count of the ballots in Ward 1, at the close of the election, there were 97 straight ballots for each party, that is, the petitioner had 97 straight ballots, and the respondent 97. At the time the ballots were counted in court, April 16, 1915, the straight ballots for the petitioner were only 94 in number, and those for the respondent were 99. And as we understand the record, it was upon these ballots, with the addition of split ballots,

that the result was tied. There is no explanation of the discrepancy. The testimony is undisputed. No witness was called by the respondent to contradict. The ward returns were not offered in evidence. No officer who at any time had custody of the ballots was called upon to show that there had been no opportunity for tampering with them. It does appear that the ballots had been several times inspected by interested parties, but the counts, if any were made, do not appear. Under these circumstances we all think the actual count in ward meeting should be taken as the truth. Three votes should be added to those counted for the respondent, and two deducted from the petitioner's count. And the result upon the whole is that the respondent has a majority of four.

III. PROCEDURE.

We think these cases are not properly before the Law Court on report, and were it not for the fact that the term of the offices in dispute is drawing towards the end, and that the shortness of the time will probably not permit the cases to go through the statutory channels before the end, the proper course would be to remand them for hearing before a single Justice. Although by reason of the exigency thus disclosed, we have persuaded ourselves with much reluctance to consider the cases on their merits, we cannot let the occasion pass without calling attention to the correct procedure.

The statutes provides for a hearing by a single Justice and an appeal from his decision and judgment to the remaining Justices. It requires the appellant to cause copies of the petition, pleadings, findings and testimony, upon which such judgment is rendered, approved by the Justice before whom the hearing is had, to be printed and transmitted to the Chief Justice within twenty days after such appeal is taken with written argument thereon. Section 72. In these cases there has been no decision and judgment. There has been no appeal. The cases have not been transmitted to the Chief Justice. They have not been printed. But the cases have been sent before us on report, and are entered on the law docket.

We think that the Law Court as such has no jurisdiction of these cases. The statute provides that on appeal, the Justices of the court "shall consider said cause immediately, and decide thereon, and transmit their decision to the clerk of the county where the suit is pending, and final judgment shall be entered accordingly."

The Law Court is a statutory court of limited jurisdiction. The Justices of the Supreme Judicial Court are not the Law Court except when they are sitting and acting within the limits of the jurisdiction of the Law Court. By statute causes may be reported to the Law Court, R. S. c. 79, s. 46. But there is no provision for the report of a case to the Justices of the Supreme Judicial Court. There are provisions in other statutes by which cases may be transmitted to the Chief Justice, argued in writing, considered and decided by the Justices, and their decision transmitted directly to the clerk of the county in which the suit is pending. In such cases the Justices never consider the matters as in Law Court. The cases are not entered on the law docket. The decisions are not certified to the clerk of the Law Court for record, nor are mandates of the decisions sent by him to the clerk below. The Justices certify their decision directly to the latter clerk, as is the provision in the election statute under consideration.

A petition to determine a contested election is not an action at law. It is not a bill in equity. It is a special, statutory proceeding which confers upon a single Justice, and upon the other Justices on appeal, jurisdiction to inquire into and determine contested election cases. The evident purpose of the statute is to provide a simple, inexpensive and prompt remedy for one who has been unlawfully deprived of the fruits of an election. It takes the place of quo warranto to oust an officer who has not been legally elected, to be followed by mandamus to instal the rightful claimant.

It is true that the statute says that the petitioner "may proceed as in equity," but that does not make the petition a bill in equity, nor make an election contest one of equitable jurisdiction. In *Bartlett* v. *McIntire,* 108 Maine, 161, this court holding that the findings of the single Justice do not on appeal have the same force as in appeals in equity, said: "The procedure is somewhat anomalous. It is true that section 70 of chapter 6 provides that the claimant "may proceed as in equity" by petition returnable before any Justice of the Supreme Judicial Court, but it does not say he shall bring a bill in equity, and the subsequent proceedings bear slight resemblance to those required by the equity rules. Moreover section 72 provides that an appeal from the decision of the single Justice shall set forth the reasons therefor. This is not required in an

appeal in equity, but is in probate appeals; and the appeal itself is taken, not to the Law Court as such, but to the Justices. A careful consideration of the entire statute and its object leads to the conclusion that the purpose of the Legislature in providing for an appeal, was to obtain the decision of the appellate Justices de novo upon all disputed questions of law and fact, and the clause in the statute providing that the claimant "may proceed as in equity was used merely in contradistinction to proceedings on the law side of the court, with its stated terms, and more rigid rules of procedure." In all election cases heretofore, with one exception, within the experience of the present members of the court the statutory procedure has been strictly followed. In one case, in which there was an appeal properly transmitted, the Justices for convenience heard oral arguments during a term of the Law Court, but the case was not entered on the law docket.

And it may be questioned whether the immediate parties by consenting to this procedure have effectively waived the requirements of the statute. Certainly waiver cannot confer jurisdiction upon the Law Court. Besides, the question of the validity of an election to public office affects public interests as well as private ones, and it may be doubted whether under such circumstances, a party should be permitted to waive. However this may be, despite the fact that these cases are irregularly before us on report, rather than on appeal, they have been argued in writing as the statute provides, and have been considered by all the Justices, as the statute contemplates.

The order in each case will be,

*Petition dismissed with costs.*