# WILLIAM D. LILLY et al. *v.* HARRY C. JONES.

[No. 39, October Term, 1929.]

*Decided January 7th, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Raymond S. Williams* and *John S. Stanley,* with whom were *Hershey, Donaldson, Williams & Stanley* on the brief, for the appellants.

*Walter H. Buck* and *Simon E. Sobeloff,* with whom were *A. Walter Kraus* and *Lindsay C. Spencer* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

On the 1st day of March, 1929, the appellants, William D. Lilly and William Bauernschmidt, voters and tax payers of Baltimore City, filed their petition in the Baltimore City Court against the appellee, Harry C. Jones, at that time serving, under appointment by the Mayor, as a member of both the Baltimore City Service Commission and the Port Development Commission, of Baltimore City, asking that a mandamus be issued directed to the appellee, commanding him to vacate the office of member of the City Service Commission and to cease from exercising the functions of that office.

The petition alleged that section 203A of the Charter of Baltimore City provides that the Mayor shall appoint, in the manner prescribed by section 25 of the Charter, three persons who shall constitute the City Service Commission of Baltimore, and that such appointment "shall be made from persons friendly to the merit system of appointment to office, and shall be so made that not more than two commissioners shall be members of the same political party"; and by section 203B it is provided that all of said commissioners shall serve without pay. That sections 203C to 203Q, both inclusive, of said Charter "confer extensive powers and impose important duties upon the three members of the City Service Commission. Under said sections, with exceptions not here material to be stated, said three commissioners are required to classify all municipal offices and positions in the City of Baltimore to which appointments are made by any person or persons

(other than the Mayor or the City Council) who are, or may be clothed by this Charter or any law or ordinance relating to Baltimore City with the power of making appointments, which offices and places so classified shall constitute the classified city service of Baltimore, and no appointment to any such offices or places shall be made except under the rules of the commission. The commission is empowered to hold examinations and tests to determine the fitness of the applicants for positions in the classified city service, and the appointing authorities are forbidden to appoint to any office or place under the city government anyone who has not been certified by the said commission as having passed the examinations or tests prescribed by it. Further provisions are made restricting the power of the appointing officer in respect of the discharge of his appointees. The substance of the aforesaid provisions of the Charter is to provide a merit system of appointment for the City of Baltimore, and to place the same under the supervision and control of said commission, so that (with exceptions not here material) no persons are eligible for appointment to office or places in the City of Baltimore unless and until such persons have been certified as eligible by said commission."

The petition then alleged that Harry C. Jones was appointed to the office of City Service Commissioner and on February, 1926, he qualified and assumed the duties of the office thereunder, which duties he, at the time of the filing of the bill, was performing as president of said commission.

It is thereafter alleged in the petition that, pursuant to the authority conferred upon him by chapter 560 of the Acts of 1920, Ordinance 377 of the Mayor and City Council of the City of Baltimore, approved July 2nd, 1920, exercised in the manner prescribed by section 25 of the Charter, the Mayor appointed the defendant, Harry C. Jones, a member of the Port Development Commission of the City of Baltimore, and on September 27th, 1927, he qualified as a member of that commission by taking the required oath before the Mayor. The compensation to be received by him, as such commissioner, was by the authority of said ordinance fixed

from year to year by the ordinance of estimates at $1,500 per annum, and this amount he was receiving at the time of the filing of the petition.

As alleged by the petition, the Port Development Commission "is authorized and empowered to 'appoint or employ professional or technical advisers or experts, including architects and engineers, and such agents, assistants, clerks, employees and laborers, skilled and unskilled' and to fix and change from time to time, subject to the approval of the Board of Estimates, their respective compensations. Said ordinance further provides (paragraph 5) 'The commission hereby created shall exercise the powers hereby conferred so as to be consistent with the provisions of the charter of Baltimore City, as now constituted or as it may be hereafter amended.' "

Upon the facts stated, it is alleged in the petition that Harry C. Jones, defendant, is now wrongfully holding and assuming to exercise the office of member of the City Service Commission, first, because that office is incompatible at common law with the office of member of the Port Development Commission, which he is now holding and exercising the duties thereof; and, second, because of his alleged ineligibility to the office of City Service Commissioner under the provisions of section 203A and 203B of the City Charter, which provides that "no one holding any public office of profit shall be appointed such commissioner" and that "all of said commissioners shall serve without pay." The allegation is then made that, in consequence of the incompatibility of the two offices, as well as the aforesaid provisions of the City Charter, Harry C. Jones, upon his appointment and qualification as a member of the Port Development Commission of Baltimore City, *ipso facto* vacated the office of member of the City Service Commission and he should now cease to perform the functions thereof, but he refuses to do so, and is now undertaking to perform such functions.

A demurrer was filed to the petition, which was heard and overruled by the learned court below. Upon the overruling of the demurrer to the petition, the defendant filed his answer thereto, in which none of the material facts alleged in

the petition are denied. The only denials found therein are to the alleged inferences drawn from such facts. It is, however, stated in the answer that "the defendant denies that the Port Development Commission of the City of Baltimore has in its employ any professional, or technical advisers or experts, architects, engineers, or other agents, clerks, associates, or any employees whatsoever; and the defendant denies that the said Port Development Commission of Baltimore has, at any time since its creation, ever appointed or employed a single employee, and he further avers that to the best of his knowledge, said Port Development Commission does not contemplate the appointment or employment of any person whatsoever, either now or at any future time."

A reading of the petition will disclose that nowhere in it is there any allegation that the Port Development Commission had in its employ any of those persons mentioned in the above stated denial of the defendant. The petition only alleged, in the language of the Charter, the right and power of the commission to employ such persons.

The answer assails the motives of the petitioners in filing their petition. In addition thereto, the answer alleges that the defendant, upon his appointment as a member of the Port Development Commission, tendered his resignation to the Mayor, and "thereupon, numerous individuals and organizations interested in the merit system in Baltimore City petitioned the Mayor not to accept said resignation, but to retain him as a member of the City Service Commission, notwithstanding his appointment as a member of the Port Development Commission, and agreeably to the wishes of said persons and organizations, the Mayor has declined and still declines to accept said resignation, and the defendant has continued to serve as City Service Commissioner and to discharge his duties as such, at a personal sacrifice of time and labor and solely out of a sense of duty, and at the request of the Mayor and others friendly to the merit system."

The answer then speaks of the high qualification of the defendant for the performance of the duties which devolve

upon a member of the City Service Commission, and the loss to the city should he be required to vacate that office.

The plaintiffs demurred to the answer and this demurrer was overruled by the court below. It is from that order overruling the demurrer to the answer that the appeal in this case was taken.

The first question involved in this appeal is: Are the offices of member of the City Service Commission and member of the Port Development Commission, of Baltimore City, incompatible at common law?

It is the well settled rule of the common law that a person cannot, at one and the same time, rightfully hold two offices which are incompatible, and thus when he accepts appointment to the second office, where this incompatibility exists, and qualifies, he vacates, or by implication resigns, the first office. 7 *Bacon's Abridgment* (Bouvier's Ed.), title Office and Officers, page 313; *Rex v. Tizzard,* 9 B. & C. 418; *People v. Carrique,* 2 Hill (N. Y.), 93; *Van Orsdall v. Hazard,* 3 Hill (N. Y.), 243; *Stubbs v. Lee,* 64 Me. 195; *Gaw v. Ashley,* 195 Mass. 173; *Moreland v. Common Council of Detroit,* 112 Mich. 105, 27 L. R. A. 211; *State v. Goff,* 15 R. I. 505; *Magie v. Stoddard,* 25 Conn. 565; *People v. Nostrand,* 46 N. Y. 375.

The courts, because of the difficulty in laying down any clear and comprehensive rule as to what constitutes incompatibility of offices, have evaded the formulation of any definition, and as a rule have contented themselves with the discussion of the facts of the case under consideration, in connection with similar and analogous facts in other cases, where a decision has been reached upon the question of incompatibility; but while the courts have evaded announcing any general definition as to what constitutes incompatibility of offices, they have suggested certain tests to be applied to the facts of each case, in determining whether the facts therein create incompatibility in the offices there involved.

In *State v. Goff,* 15 R. I. 505, and quoted with approval in *Moreland v. Detroit Common Council, supra,* it is said:

"The test of incompatibility is the character and relation of the offices; as where one is subordinate to the other, and subject in some degree to its revisory power; or where the functions of the two offices are inherently inconsistent and repugnant. In such cases it has uniformly been held that the same person cannot hold both offices." See *Rex. v. Pateman,* 2 Term Report, 777. And as stated in 22 *R. C. L.,* par. 56, 414: "One of the most important tests as to whether offices are incompatible is found in the principle that the incompatibility is recognized whenever one is subordinate to the other in some of its important and principal duties, or is subject to supervision by the other, or where a contrariety and antagonism would result in the attempt by one person to discharge the duties of both"; and, as again stated in *State ex rel. Clawson v. Thompson,* 20 N. J. L. 689: "Where there is no express provision, the true test is, whether the two offices are compatible in their natures in the rights, duties or obligations connected with or flowing out of them"; or, as said by Bacon, "Offices are said to be incompatible and inconsistent, so as to be executed by the same person * * * when their being subordinate and interfering with each other, it induces a presumption they cannot be executed with impartiality and honesty." 7 *Bacon's Abridgment,* 363; *Rex v. Tizzard, supra; Howard v. Harrington,* 114 Me. 443, L. R. A. 1917A, 211, and notes thereunder.

Applying these tests to the facts alleged in the petition of the appellant, we cannot escape the conclusion that the offices involved therein are incompatible. The powers and duties of the Port Development Commission in the matter of appointments are subject to the supervisory powers of the City Service Commission, and to permit one person to exercise the powers of both commissions would not only allow him to exercise powers that are inconsistent, but would defeat the very object and purpose of the creation of the City Service Commission. As so well stated by the counsel for the appellant in their brief: "The purpose of this Charter was to grant to this unpaid commission the entire and exclusive

power of selection of all employees in the classified city service. In other words, the City Service Commission has the entire and exclusive power of selection and no power of appointment. The departmental heads or appointing powers (presumably holders of said positions) have the perfunctory and naked power of appointing or inducting into office those whom the City Service Commission has, after proper tests or examinations, certified as being eligible to the positions applied for. The City Service Commission cannot appoint; the appointing powers cannot select. It is this division of power which is the basic and fundamental purpose of the whole City Service Charter and an obliteration of this division by combining both powers in the same official is a destruction of the very foundation upon which rests the whole structure."

The contention is however made that, though it be properly held that there is an incompatibility in these offices where the Port Development Commission has exercised its powers of appointment, there is no incompatibility where such power of appointment, as alleged in the answer, has not been actually exercised by that commission.

This contention prevailed with the learned judge below, for he, in announcing his conclusion overruling the demurrer to the answer, stated that "in overruling the demurrer to the petition herein, I proceeded upon the theory that the duties of the two offices held by the defendant are so far incompatible as described in the said petition as to render it improper that they be held together by one person. * * * The case is now before me on demurrer to answer. In effect the answer is a pleading by way of confession and avoidance. It admits that the statutorily defined duties of the two boards are as stated in the petition; but it asserts that the actual performance of those duties, during the sixteen months in which defendant has held both offices, has been so circumscribed in fact that the possible or potential incompatibility of performance has not arisen; and it asserts further that such conditions are likely to persist." And the court rested

its decision on the demurrer to the answer, not upon what could have been done by the Port Development Commission, but what was actually done or likely to be done by it. The decision of the lower court was in effect that, so long as the power of appointment was not exercised by the Port Development Commission, the appellee could rightfully hold the office of member of the City Service Commission, but, at once upon the exercise of that power by the Port Development Commission, he vacated the office of member of the City Service Commission.

Is this the meaning of the law controlling in these cases? Is the incompatibility of offices to be determined by the power that may be exercised by their incumbents, or by the power which is actually exercised by them?

This same contention was made in *Moreland v. Detroit Common Council, supra,* the question in that case being whether there was in incompatibility in the offices of Mayor of Detroit and Governor of the State of Michigan. The court there said: "The remoteness of the necessity for the removal of a Mayor by the Governor (a power which was vested in the Governor) is urged by counsel for the respondent as a reason why a legal incompatibility does not exist at the common law. The question, however, is one of the existence of the power and not the remoteness of its exercise." "The argument that the contingency for its use is very remote, is without force."

The same contention was made in *State v. Goff, supra,* where the question was whether the offices of justice of a district court and deputy sheriff were incompatible, and there the court stated: "It may be said, however, that the respondent need not, and probably will not, undertake to act in both offices at the same time, but, in the words of Ames, C. J. in *State v. Brown,* 5 R. I. 1-11 * * * 'the question of incompatibility is to be determined from the nature of the duties of the two offices, and not from a possibility or even a probability that the defendant might duly perform the duties of both.' "

The logical conclusion would seem to be that the question

of incompatibility of offices should be determined, not upon what is done, or likely to be done, by the incumbent in the performance of his duties, but what he may do under the power conferred upon him. It is, we think, analogous to the principle recognized by the decisions of this court, that "the constitutional validity of law is to be tested not by what has been done under it, but, by what may, by its authority be done." *Ulman v. Baltimore,* 72 Md. 596; *Stuart v. Palmer,* 74 N. Y. 183.

The conclusion we have reached as to the incompatibility of the offices in question would alone result in a reversal of the order appealed from, but in view of the possible importance to the city of the other question presented, we will also consider and pass upon it.

This question involves the proper interpretation or construction of the provision of the charter which provides that "no one holding any public office shall be appointed such commissioner," meaning thereby a member of the City Service Commission.

It is contended by the appellants that in the use of these words it was the legislative intent that no one holding a public office of profit should at the same time occupy the position of City Service Commissioner; while the contention is made by the appellee that the qualification refers only to the time of appointment, and it is sufficient if at such time the person so appointed is not the holder of an office of profit, and the fact that he was appointed on the following day to an office of profit would not violate the provision of the charter or affect his right to continue as a member of the City Service Commission.

This court has a number of times said: "The cardinal rule in the construction of a statute is to ascertain the intention of the legislature, as it is expressed in the words of the statute and for this purpose the whole of the act must be considered together." *Mitchell v. State,* 115 Md. 360; *Healy v. State,* 115 Md. 377; *Purnell v. State Board of Education,* 125 Md. 266; *Brenner v. Brenner,* 127 Md. 193; *Merrill v. State Military Department,* 152 Md. 474.

In the last cited case, *Merrill v. State Military Department, supra,* this court, in stating the principles governing the construction of statutes, speaking through Judge Offutt, said:

"Assuming that the act under consideration has some meaning, and that it was intended to accomplish some definite purpose, it becomes our duty to ascertain and give effect to that intent. For, as was said in *Roland Park v. State,* 80 Md. 451: 'What we have to do is to discover the legislative intention and to give it, when ascertained in accordance with established canons or rules, full and complete effect. The mere words which the legislature may use are not always controlling. If the obvious purpose of an enactment is beyond the literal meaning of the language employed, it will not be restricted in its scope and application by the narrow significance of its words; and equally, too, broad and comprehensive terms will not include that which is not within the design and the object of the statute. The real intent, when ascertained, will always prevail over the literal sense of the language (*State v. Milburn,* 9 Gill, 109; *Milburn v. State,* 1 Md. 17), because both the canons of verbal criticism and the rules of grammatical construction must alike yield to the manifest spirit and intent of an enactment. Or, as differently expressed, "Sometimes cases not within the words are held to be within the act, and other cases are by construction taken without the operation of the law, though covered by the language, according to the intent and design of the legislature." *Wilson etc. v. State, use of Davis,* 21 Md. 1. This intent or design may be gathered not merely from the language of the enactment, but also from the causes or necessity which prompted its passage, and from foreign circumstances. *Johnson and Wife v. Heald, Excr.,* 33 Md. 352; *Dorousseau v. United States,* 6 Cranch, 307.' "

In accordance with the principles above laid down, the legislative intent or meaning of said provisions of the Charter is to be ascertained from the objects and purposes sought thereby, considered in connection with the language used.

These provisions of the Charter providing for the creation of the City Service Commission were passed as the result of a

determination of the people of the City of Baltimore to inaugurate into its government what is known as the merit system in the selection and retention of employees. This system was inaugurated, first, to secure the appointment of persons, after examination, suitable and qualified for the positions or offices for which they are applicants, and, second, when, after appointment, their efficiency and worth are shown to exist, to place their removal beyond the control of the appointing power, who might, for political, religious, or other insufficient reasons, be disposed to remove them, and to appoint unsuitable and inefficient persons as their successors, to the injury and detriment of the public.

The impartial execution of the requirements of these provisions of the Charter devolves upon the members of the City Service Commission, and upon them rests the responsibility of the successful carrying out of the system so inaugurated, and it is in recognition of this fact that the Charter provides that only those friendly to the merit system, and sufficiently interested in its successful operation to be willing to serve without pay, shall be appointed to the commission. It was the evident object and purpose of these provisions of the Charter to exclude from appointment those persons, of the class of partisan and political office seekers, who, by reason of their appreciation of a salaried office and their loyalty to the party with which the appointing power is affiliated and to the appointing power itself, might be prevented from performing impartially the duties required of a member of the commission in respect to the merit system.

It is conceded that, had the appellee been a member of the Port Development Commission at the time of his appointment to the City Service Commission, his appointment to the latter commission would have been in violation of the provisions of the Charter, but, as he was not then a member of the Port Development Commission, the appellee claims that the provisions of the Charter were not violated by his retention of membership upon the City Service Commission.

We cannot conceive that in the passage of these provisions of the Charter it was the legislative intent that a member of

the City Service Commission could validly remain in office, after his appointment to the Port Development Commission, an office of profit, when his appointment to the City Service Commission would have been invalid had it been deferred one day, to a time after his appointment to the Port Development Commission. If this were so, the merit system would be practically defeated, at least in respect to the offices of profit to which members of the City Service Commission were appointed, by an agreement between the appointing power and the person to be appointed, that, on the day following the appointment of the latter to the City Service Commission, he would be appointed to a lucrative office. This construction of these provisions of the Charter would, we think, be in opposition to the legislative intent, and in violation of their meaning as gathered from the objects and purposes thereby sought, and the language used therein. And this conclusion is reached, we think, without violating any of the rules or principles of the construction of statutes.

For the reasons stated, the order appealed from will be reversed and the case remanded for further proceedings, in accordance with this opinion.

> *Order reversed; case remanded for further proceedings, with costs to the appellants.*