DAVID T. WILENTZ, ATTORNEY-GENERAL OF THE STATE OF NEW JERSEY, EX REL. SOLOMON GOLAT, RELATOR-APPELLANT, v. GEORGE H. STANGER, DEFENDANT-RESPONDENT.

Argued January 29, 1943—Decided March 11, 1943.

For the relator-appellant, *Samuel Kaufman*.

For the defendant-respondent, *David T. Wilentz,* Attorney-General, *John F. Bruther,* Assistant Attorney-General, and *Edward J. O'Mara.*

The opinion of the court was delivered by

CASE, J.   The appeal is by the relator from a judgment of the Supreme Court rendered on a demurrer to an information in the nature of a writ of *quo warranto,* the purpose of the proceeding being to oust George H. Stanger from his office as member of the state senate from the County of Cumberland.

In July of 1941 Arthur F. Foran, of the County of Hunterdon, was a member of the New Jersey Senate; also was the respondent, George H. Stanger, of the County of Cumberland. On July 15th, 1941, the legislature enacted the Milk Control Law, *R. S.* 4:12A-1, *et seq.; Pamph. L.* 1941, *ch.* 274. Both of these men voted for the passage of the bill, the governor's veto thereto notwithstanding. Four days later Senator Foran was appointed to, and qualified for, the office of Director of Milk Control, an office created by the said legislation. It is conceded that Foran's appointment was to an office within the meaning of the word "office" as used in the constitution, that such office was incompatible with the office of senator and that Mr. Foran presently resigned his membership in the senate. The same paragraph (section 4) of the statute which provided for the appointment of a director also provided that "the director may appoint a deputy director and counsel and may fix their compensation" and that the director might appoint and prescribe the duties of such clerical, technical and other assistants as might be necessary. There was no statutory definition of the duties of counsel and there was no language even remotely bearing thereon other than the general direction (in section 8) that "any duly authorized appointee of the director shall * * * enforce the provisions

of this act and all rules and regulations promulgated by the director and all orders thereunder made by the director." On January 1st, 1942, Director Foran appointed Senator Stanger counsel to the Director of Milk Control at a stated salary of $3,600 per annum. No specification of the duties of counsel, either by way of rules, regulations or otherwise, appears to have been made by the director, and it is not shown what duties the respondent actually performed. On March 23d, 1942, after Mr. Stanger had received the appointment of counsel and had entered upon the duties of the appointment he, as a member of the senate, voted in favor of the annual appropriation bill which set over to the use of the State Board of Milk Control $10,000 as the salary of the director and $72,180 "for other officers and employees" of the board, within which item was Senator Stanger's salary as counsel. On October 1st, 1942, Stanger severed his connection with the director and Board of Milk Control.

Appellant's first point is that under article III, paragraph 1 of the state constitution, Mr. Stanger vacated his seat in the senate when he assumed the post of counsel to the Director of Milk Control. The paragraph referred to reads:

"The powers of the government shall be divided into three distinct departments—the Legislative, Executive, and Judicial; and no person or persons belonging to, or constituting one of these departments, shall exercise any of the powers properly belonging to either of the others, except as herein expressly provided."

It appears to be appellant's contention that an ouster may be granted upon the authority of this constitutional provision, if there has been an exercise by a person belonging to one department of powers properly belonging to one of the other departments.

The duties of the Milk Control Board were administrative (*Cf. State Board of Milk Control* v. *Newark Milk Co.*, 118 *N. J. Eq.* 504, 523) and therefore within the executive branch of the government. Stanger, as a member of the state senate, belonged to the legislative department. When he entered upon his appointment as counsel, he, to that extent, became attached to the executive department. He placed himself in

a dual role contrary to the terms of the constitution. Aside from the conflict with the plain inhibition of our paramount law the incompatibility of the two posts was made manifest when he was called upon as senator to vote, and voted, for the appropriation for the salary of his superior officer by whose grace he received and retained his appointment and by whom the amount of his salary and the volume of his duties were determined; and also when he voted for the appropriation to cover his own salary as counsel.

Further, in our opinion, the contribution or allowance made to Mr. Stanger for his services as counsel was in violation of article IV, section IV, paragraph 7 of the constitution which directs that

"Members of the Senate and General Assembly shall receive annually the sum of five hundred dollars during the time for which they shall have been elected, and while they shall hold their office, and no other allowance or emolument, directly or indirectly, for any purpose whatever. The president of the Senate and the speaker of the house of Assembly shall, in virtue of their offices, receive an additional compensation, equal to one-third of their allowance as members."

The compensation of $500 fixed for members of the legislature is the maximum compensation, according to our understanding, permitted to be paid from the state treasury for any and all services by such members to or on behalf of the state, and the words "no other allowance or emolument, directly or indirectly, for any purpose whatever" are inclusive of the compensation nominated by the director to be paid to Mr. Stanger for his services as counsel.

There are remedies and procedures by which the provisions of article III, paragraph 1 and of article IV, section IV, paragraph 7 may be given effect. We are clearly of the opinion, however, that article III, paragraph 1 does not carry a self-executing penalty to the extent that when a member of one of the governmental departments trespasses into the domain of another co-ordinated branch his office is thereby automatically vacated by reason of those constitutional provisions without more. A simple reading discloses that there is no authority, either specific or implied, within the quoted

provisions for the vacating of office. It requires no legal training to perceive that the provisions of article III, paragraph 1 weigh equally upon the several branches. The restraints are upon the executive and the judicial no less than upon the legislative. Let us assume that a judge makes a pronouncement which an adversely affected party conceives to belong exclusively to the lawmaking branch; an appeal is taken; the appellate court measures the issue in terms of the constitution and determines that the judicial act was in fact a trespass upon the legislative branch and sets it aside. Article III, paragraph 1 has been first violated and then sustained; but has the offending judge vacated his office? Such a supposition is not too far afield. In *In re Freeholders of Hudson County*, 105 *N. J. L.* 57, the Supreme Court dismissed upon the ground, in part, that the statute there disputed was within the legislative. domain and the courts must not enter therein; but there was respectable dissent; and if the dissenting view had there prevailed, only to be reversed by the court of last resort, would those justices who had undertaken to enter the legislative field thereby have vacated their offices in .the judicial branch? A like hypothesis might be grounded upon a misuse of authority, however unintentional, by the governor; but we apprehend that neither the governor in such an instance nor the judges in the questions last posed would be held to have vacated their offices or be subjected to a writ of ouster for such an unconstitutional act.

The point is not sustained.

The second point advanced by appellant is that under common law principles it is incompatible for a senator to be counsel to the Director of Milk Control and that the acceptance and exercise of the latter place vacates the former. Under this point (as well as under point one) it is appellant's effort to demonstrate that independently of the aspect of the counselship as an office or a position, or whatever the legal classification may be, mere incompatibility between it and the office of senator works a vacating of the latter. Incompatibility there certainly was, and we have already so held; but appellant has not demonstrated that the common law holdings were applied to posts outside the class of what our courts

have held to be offices. The discussion of whether or not the counselship was an office or a position more properly belongs with the matter argued as point 3, but we briefly analyze the decisions cited by appellant in support of his point:

*Dyer's Case*, 2 *Dyer*, 158b; 73 *English Reports* 344, held that the acceptance by a Justice of C. B. of letters patent creating him a Justice of B. R. vacated his former patent.

*Rex* v. *Pateman*, 2 *T. R.* 777; 100 *Eng. Reprint* 419, had to do with incompatibility between *offices*.

*People, ex rel. Whiting* v. *Carrique*, 2 *Hill* (*N. Y.*) 93, likewise.

*People, ex rel. Henry* v. *Nostrand*, 46 *N. Y.* 375, likewise.

*Attorney-General* v. *Henry*, 262 *Mass.* 127; 159 *N. E. Rep.* 539, dealt with the question of incompatibility between the office of selectman and the office (so designated) of superintendent of streets whose powers were defined by statute.

*Lilly* v. *Jones*, 158 *Md.* 260; 148 *Atl. Rep.* 434, considered incompatibility as between the office of member of the City Service Commission of Baltimore and the office of member of the Port Authority Commission.

*Lopez* v. *Martorell*, 59 *Fed. Rep.* (2d) 176, dealt with the office of justice of the peace in connection with the elective office of substitute member of the Board of Review and Equalization of Puerto Rico. The cited cases sustain the principle of common law ouster for incompatibility in offices; but that is not the whole point. Appellant asserts that the distinction between office and position is immaterial under common law principles, and he does not support that contention.

Another line of citations contained in appellant's brief are: *Howard* v. *Harrington*, 114 *Me.* 443; 96 *Atl. Rep.* 769, (mayoralty and judgeship), wherein it is said that "At common law two *offices* whose functions are inconsistent are regarded as incompatible;" *Rex* v. *Tizzard*, 9 *Barnewall & Cresswell* 418; 109 *Eng. Reports* (reprint) 155 (alderman and town clerk), stating "Two *offices* are incompatible when the holder cannot in every instance discharge the duties of each * * *;" *Abry* v. *Gray*, 58 *Kan.* 149; 48 *Pac. Rep.* 577, (city clerk and clerk of the District Court of Leaven-

worth County), declaring that it is incompatible "where the nature and duties of the two *offices* are such as to render it improper, from considerations of public policy, for one person to retain both."

· The New Jersey decisions cited by appellant in support of this point are: *State* v. *Parkhurst,* 9 *N. J. L.* 427, wherein it was said:

"Now I hold it to be a clear principle (and so it was determined by all the judges in the case of Sir Edward Coke, on his translation from the Common Pleas to the King's Bench), that if a person holding an *office,* be appointed to and accept another *office,* incompatible therewith, such acceptance of the second is a virtual surrender of and vacates the first. And so also it is said by Lord Mansfield, in *Bur.* 1615, in the case of *The King* v. *Trelawney Steward, &c., of West Coe"* (at *p.* 447) ;

*State, ex rel. Clawson* v. *Thompson,* 20 *N. J. L.* 689, stating : "There are many cases where two offices cannot be held by the same person; although neither the ·constitution nor the statutes have provided against it. * * * The general principle undoubtedly is, that the acceptance of a higher incompatible *office, ipso facto,* vacates the inferior one, if held by the same person. *Com. Dig. Tit. 'Office.'* And in *Milward* v. *Thatcher,* 2 *Term R.* 81, it was adjudged, that the acceptance of an inferior *office* was a surrender of the superior. * * *"

*Oliver* v. *Jersey City,* 63 *N. J. L.* 634 (reversing 63 *Id.* 96), which was based upon the terms · of the *statute* creating the Board of Street and Water Commissioners and dealt with the *office* of member of the Board of Street and Water Commissioners and "the *office* of colonel" in the 4th Regiment of New Jersey Volunteers; *Lofland* v. *Hilton,* 80 *Id.* 528, wherein the dispute concerned the "offices" (so designated) of elected supervisor of roads and chosen freeholder; *Wescott, Attorney-General* v. *Scull,* 87 *Id.* 410, which, so far as pertinent, is a holding that the office of chosen freeholder was incompatible with that of a member of common council; *Adams* v. *Young,* 6 *N. J. Mis. R.* 224, turning upon the incompatibility of the *office* of councilman and the *office* of

alderman—"The only real question for consideration is the incompatibility of the two *offices* * * *;" *Tonkin* v. *Kenworthy,* 112 *N. J. L.* 274, passing upon the contention, arising with respect to "a public body created for public purposes," that "the *offices* of president and secretary are incompatible."

We have thus, by short notation, indicated with respect to each court decision cited by appellant that the decision affords no support for his contention that the common law practice of ousting for incompatibility extended outside the realm of *offices.* In each instance the dispute concerned offices, so designated; offices of such attributes, where the decisions are in foreign jurisdictions, as would give them the like ranking of "offices" in our own jurisprudence.

The point that appellant does make is that by the common law the acceptance and exercise of an office incompatible with a presently occupied office acts as a vacating of the latter; and this leaves an open inquiry whether the appointment of defendant as counsel was an appointment to an office, a question which, together with its significance, comes within the purview of the next point.

Appellant's third and final point (except as to jurisdiction) is that respondent, upon his appointment as counsel, vacated his seat in the senate by virtue of article IV, section V, paragraph 3 of our constitution which provides:

"No Justice of the Supreme Court, nor Judge of any other Court, Sheriff, Justice of the Peace, nor any person or persons possessed of any office of profit under the government of this State shall be entitled to a seat either in the Senate or in the General Assembly; but on being elected and taking his seat, his office shall be considered vacant; and no person holding any office of profit under the Government of the United States shall be entitled to a seat in either house."

It is first to be observed that this provision relates only to offices. It should then be noted that although a strict reading may seem to call only for the vacating of another office when the incumbent takes his seat as a member of the Assembly or of the Senate, nevertheless the accepted construction is and has long been that, as well, a member of the legislature vacates his seat therein when he enters upon one of the offices

which by parity of reasoning is not to be held contemporaneously therewith. *State* v. *Parkhurst,* 9 *N. J. L.* 427, 438, *et seq.*

The issue may be reduced to one inquiry, a question of law, namely, was Mr. Stanger's appointment as counsel an appointment to an office of profit under the government of the state? And under the admissions in the case the question may be reduced to still simpler terms—was the appointment to an *office?*

We may discover the fundamentals of the term "office" from the definitions given in opinions by two of our eminent jurists. Mr. Justice Dixon, in *Stewart* v. *Freeholders of Hudson,* 61 *N. J. L.* 117, defined and distinguished the terms "office" and "position" thus: "'An office' is a place created, or at least recognized, by the law of the state, and to which certain permanent public duties are assigned either by the law itself or by regulations adopted under authority of law. * * * 'A position,' within the purview of this act (viz., *Gen. Stat., p.* 3702), is defined to be a place, the duties of which are continuous and permanent, analogous to those of an office, and which pertain to the position as such."

Mr. Justice Garrison, in *Fredericks* v. *Board of Health,* 82 *N. J. L.* 200, said: "An office is a place in a governmental system created or recognized by the law of the state which, either directly or by delegated authority, assigns to the incumbent thereof the continuous performance of certain permanent public duties. * * * A position is analogous to an office, in that the duties that pertain to it are permanent and certain, but it differs from an office, in that its duties may be non-governmental and not assigned to it by any public law of the state. * * * An employment differs from both an office and a position, in that its duties, which are non-governmental, are neither certain nor permanent."

To like effect, *McGrath* v. *Bayonne,* 85 *N. J. L.* 188.

A textbook definition, taken from *Mechams' Public Off., p.* 1, § 1, and incorporated with approval by Mr. Justice Van Syckel in his opinion in *Oliver* v. *Jersey City,* 63 *N. J. L.* 96, is:

"A public office is the right, authority and duty created

and conferred by law, by which, for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public. The individual so invested is a public officer."

The place of legal adviser to a public body may, by suitable statutory provision and endowment with sovereign duties and other appropriate indicia of rank in the public service, be constituted as an office. The Supreme Court has lately (December 30th, 1942) held that the post of county counsel, as there presented, was such. *Gallaher* v. *Camden County,* 129 *N. J. L.* 290. That decision has not been before us for review and we therefore withhold comment thereon further than to say that a sharp distinction exists between that case and this. The post of county counsel, or, as it is sometimes termed, county solicitor or county attorney, has long existed, is generally recognized even beyond its statutory attributes and has taken its place in legislation of paramount importance as for illustration in that relating to our institutions and agencies, where *R. S.* 30:4-23 "county counsel" is made inclusive of the chief legal officer of the board of chosen freeholders and, *R. S.* 30:4-34, the county counsel is delegated with duties as county adjuster in the supervision of the preparation of papers, as well as in other matters, relating to the commitment of the insane. So, too, in *R. S.* 30:4-109 the county attorney is designated a "public official" in conjunction with the paroling of inmates from correctional institutions. And in first class counties the county counsel is specifically designated an officer. *R. S.* 40:21-59, 40:21-60.

Applying the tests above mentioned to the appointment held by Mr. Stanger as counsel to the Director of Milk Control we find that the post was not an office. It was recognized by the law of this state but it carried no certain, permanent, public duties, governmental in nature, either under assignment by the law itself or by rules or regulations promulgated by the director. Bearing in mind the characteristic service of a counsel we believe that the general obligation laid upon any duly authorized appointee of the director" to enforce the

provisions of the act is not efficacious to establish the appointment as an office. In the absence of other formal attributes which frequently help to identify a place in the public service as an office we consider that the utter lack of a function of government as an incident to the post to which Mr. Stanger was appointed and which, for a time, he occupied must result in the conclusion that that post was not an office and therefore did not subject Mr. Stanger's seat in the senate to being vacated under the condition imposed by article IV, section V, paragraph 3 of the constitution, or under the common law incidents to an office.

It is said under point four of respondent's brief that the Senate has the exclusive prerogative of determining the qualifications of its members; but it is left to inference just what application is intended to be made thereof to the issues before us. Article IV, section IV, paragraph 2 of the state constitution is quoted as follows:

"Each house shall be the judge of the elections, returns and qualifications of its own members." And the case of *State* v. *Shumate* (*Tenn.*), 113 *S. W. Rep.* (*2d*) 381, is cited. The cited case loses much of its force here for a reason stated in the opinion as follows: "We may remark that our Constitution contains no provision, as some Constitutions do, that the acceptance of one office *ipso facto* vacates an office previously held." See the content and effect of our article IV, section V, paragraph 3, *supra*.

The two references constitute the entire matter presented under respondent's point, and we are unwilling to deal elaborately with so important a matter so briefly and so indefinitely presented. It is enough to say: Early (1804) in our statehood, when a similar constitutional provision was extant, namely, "V. That the Assembly, when met, shall have power * * * to be judges of the qualifications and elections of their own members * * *," the Supreme Court undertook to, and did, decide, as one of the essential steps toward the ultimate determination, that a member of the Assembly, in accepting appointment to the office of clerk of the Court of General Quarter Sessions and the Court of Common Pleas, had under article XX of the then constitution ("That the

legislative department * * * may, as much as possible, be preserved from all suspicion of corruption, none of the judges of the Supreme or other court, sheriffs, or any other person or persons possessed of any post of profit under the government, other than justices of the peace, shall be entitled to a seat in the assembly; but that, on his being elected and taking his seat, his office or post shall be considered as vacant") vacated his seat in the Assembly. *State* v. *Parkhurst, supra.* In *State* v. *Rogers,* 56 *N. J. L.* 480, against the contention that such a holding would violate the constitution, article IV, section IV, paragraphs 2 and 3 (making each house of the legislature the judge of the elections and qualifications of its members, and empowering it to choose its own officers), the Supreme Court held (at *p.* 616) that "when the inquiry is whether the legislature or any other body or officer has violated the regulations of the constitution, it is entirely plain that the decision of that subject must rest exclusively with the judicial department of the government," and in pursuance of that principle of law the court decided that of two contending factions, each claiming to have organized as the senate, the one had proceeded in accordance with the constitution and had duly elected a senate president, and the other had acted contrary to the constitution and had given no validity to the election of its so-called president *pro tempore* who was thereupon ousted.

We have no doubt, and therefore we hold, that the courts have supreme authority to decide the constitutional questions here presented.

The judgment below will be affirmed.

*For affirmance*—THE CHANCELLOR, CASE, DONGES, HEHER, PERSKIE, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ. 11.

*For reversal*—None.