Ray W. HASKINS, Appellant
(Defendant below),

v.

STATE of Wyoming ex rel. Inze L. HAR-
RINGTON et al., Appellees
(Plaintiffs below).

No. 4175.

Supreme Court of Wyoming.

Dec. 11, 1973.

Charles E. Graves, Cheyenne, for appel-
lant.

Ross D. Copenhaver, Copenhaver &
Castberg, Powell, for appellees.

Before PARKER, C. J., and McEWAN,
GUTHRIE, McINTYRE and Mc-
CLINTOCK, JJ.

Mr. Justice McCLINTOCK delivered the
opinion of the court.

Ray W. Haskins appeals from the deci-
sion of the District Court of Park County,
Wyoming, ousting him from office as
member of the board of trustees of Park
County School District No. 1.

Haskins, a contract teacher in the dis-
trict for some 15 years, ran for, was elect-

ed, and on June 30, 1971 qualified as a member of the board of trustees. Claiming that such service as a member of the board was incompatible and inconsistent with his service as a teacher in the school district, Inze L. Harrington and three other members of that same board, through the county attorney of Park County, Wyoming, secured leave to file and on September 8, 1971 did file complaint in quo warranto.

After alleging Haskins' election and qualification as member of the board of trustees while under employment by the district as teacher, the complaint sets forth a number of respects in which the office of trustee and employment as teacher are claimed to be incompatible and inconsistent, being essentially that the position of teacher is subordinate to the office of trustee and that Haskins as trustee will have power and authority over himself as teacher, over other teachers, and over administrative personnel who in turn have power and authority over Haskins as teacher. It is alleged that contrariety will result from any attempt of Haskins faithfully to discharge his responsibilities as trustee toward his position as teacher, and that as a teacher he has a personal and individual interest which will conflict with the interests of the district.

It is then alleged that the exercise of such incompatible, inconsistent, and repugnant duties and authority is not in the best interest of the school district or its residents, citizens, and taxpayers and by reason of these facts Haskins is not qualified to hold or exercise the office of a member of the board of trustees.

A second claim repeats the basic allegations of the first claim, and states that Haskins has failed and refused to resign or terminate his employment as a teacher, by reason of which failure he has forfeited his office as such trustee.

The complaint prays for judgment of ouster and a declaration of forfeiture and vacancy of Haskins' office as member of the board of trustees.

By amended answer setting forth affirmative defenses Haskins admits that he was and is a teacher, that he qualified as an elected member of the board of trustees, and that he does not plan to resign or terminate his employment as a teacher. All allegations of the complaint with respect to incompatibility and inconsistency of the office of trustee and employment as teacher are denied.

In three affirmative defenses Haskins claims that he is entitled to hold the office of trustee while continuing his employment as teacher under the equal rights provisions of art. 1 of the Wyoming Constitution, the equal rights and due process clauses of the fourteenth amendment to the United States Constitution, and § 22.1-299, W.S.1957, Cum.Supp.1973, providing that a qualified elector resident in a school district is eligible to hold the office of school district trustee. A fourth affirmative defense alleges that in each case where he has deemed it necessary or that he has been requested to do so he has failed and refused to vote and participate in the discussion of matters which pertain to his personal employment, all in accordance with §§ 6–178 and 9–680, W.S.1957, Cum. Supp.1973.

Both parties moved for summary judgment claiming that there was no genuine issue of fact. The motions were accompanied by affidavits, the tenor and effect of the relators' being mainly to designate instances where Haskins had voluntarily or upon suggestion of other members of the board disqualified himself from participation in board matters; the gist of Haskins' being that by such abstention he had been able to avoid any conflict of interest situations.

After argument on the motions judgment was entered sustaining relators' motion and ousting Haskins as a member of the board of trustees. In this judgment it is found that statutes of Wyoming have not changed the common law regarding incompatible positions; that the position of teacher and office of member of board of

trustees in the same school district are incompatible and inconsistent; that Haskins' position as a teacher employed by the district is incompatible and inconsistent with the office of member of the board; and by reason thereof Haskins is not qualified to continue to serve as a member of the board and should be ousted and removed as such trustee.

While relators do not contend that Haskins' employment as a teacher amounts to the holding of an office in the ordinary sense of that term,[1] they state the issue to be the right of Haskins to hold and exercise the duties of an office when such office and duties conflict with and are superior to and supervisory of the employment of such officer within the same school district. They would deny his right to hold the office as trustee by application of the common-law rule against holding incompatible offices. However, as they state the rule, it

" * * * provides that a person cannot hold incompatible and inconsistent offices *or two positions*, one of which is subordinate to the other  * * * " (Emphasis supplied.)

Relators' argument, then, is directed toward establishing that the office and the employment are in fact and law incompatible.

Haskins, on the other hand, contends that constitutional and statutory enactments of this state have changed the common law applicable to incompatible positions or positions involving conflict of interest; that the common-law prohibition against holding incompatible offices does not apply to positions; and that he has a constitutionally protected right to run for and hold office subject only to the legislative right to protect the public interest in providing statutory conflict of interest rules.

### The Constitutional Defenses

Considering Haskins' last proposition first, we are of the opinion that there is no constitutionally protected right to hold incompatible offices or employments. The antiquity of the common-law rule; the great number of cases in which it has been applied; the public policy served by a requirement of undivided loyalty; all lead us to conclude that application of the rule against holding incompatible offices, whether by the common law or as it might be declared by legislative enactment, does not result in an unconstitutional infringement of personal and political rights. The rights protected by §§ 2 and 3 of art. 1 of our constitution, as well as those protected under the first, ninth, tenth, and fourteenth amendments to the federal constitution, are not absolutes and do not preclude imposition, by decision or statute, of such reasonable restrictions on those rights as are in the public interest. Thus, while it has been said that a public officer or employee has the right to engage in political expression and run for political office, Sweezey v. New Hampshire (1957), 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311; Monitor Patriot Company v. Roy (1971), 401 U.S. 265, 91 S.Ct. 621, 28 L.Ed.2d 35, it has also been held that if this personal interest comes in conflict with a compelling state policy or interest the person's right must be considered subordinated to the public interest. United States Civil Service Commission v. National Association of Letter Carriers, AFL–CIO (1973), 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796, approves and reiterates the holding in United Public Workers of America (C.I.O.) v. Mitchell (1947), 330 U.S. 75, 67 S.

---

1. That a teacher is not usually considered an officer is well settled. Main v. Claremont Unified School District (1958), 161 Cal.App. 2d 189, 326 P.2d 573, 579; Kostanzer v. State (1933), 205 Ind. 536, 187 N.E. 337, 341; Thorp v. Board of Trustees of Schools for Industrial Education of Newark (1951), 6 N.J. 498, 79 A.2d 462; Steinson v. Board of Education of the City of New York (1901), 165 N.Y. 431, 59 N.E. 300; State ex rel. Scarl v. Small (1956), 103 Ohio App. 214, 145 N.E.2d 200, and State ex rel. Board of Directors of School Dist. No. 306 v. Preston (1922), 120 Wash. 569, 208 P. 47.

Ct. 556, 91 L.Ed. 754, sustaining restraints imposed by Congress upon the right of federal officers and employees to participate in political activities. These decisions sustain the right of the sovereignty to impose reasonable restrictions on personal and political rights.

We believe this is also an answer to Haskins' claim under his third affirmative defense that he is entitled to hold his office under § 22.1–299, W.S.1957, Cum. Supp.1973, providing that a "qualified elector of the school district is eligible to hold the office of school district trustee." The statute does not purport to eliminate or restrict the rule against holding incompatible offices, and we can not so construe it.

We therefore hold that application of the rule against incompatibility is not an unreasonable interference with any of Haskins' political rights and that the first three affirmative defenses as alleged in the amended answer are without merit upon the issues involved. We then proceed to the question of whether the right of Haskins to hold the office of trustee while continuing as a teacher is proscribed by the common-law rule against incompatibility.

*The Rule Against Holding Incompatible Offices*

It is said in 78 C.J.S. Schools § 155, p. 972, that a "school officer whose duties are incompatible with those of a teacher cannot be both officer and teacher at the same time." The authorities cited include Knuckles v. Board of Education of Bell County (1938), 272 Ky. 431, 114 S.W.2d 511, which denied a teacher the right to act as superintendent or assistant superintendent in the same school system. Holding that the duties of an assistant or deputy official are circumscribed by the same boundaries as those possessed by his principal, the court says (p. 515):

"Many of those duties in their nature are supervisory of the conduct of teachers in the schools under the jurisdiction and control of the superintendent.

* * * There are many other imposed duties on the county superintendent requiring supervisory action by him over the teachers in his county which are unnecessary to specify in this opinion, since those that we have referred to are sufficient to establish the fact that the positions of superintendent (and also assistant superintendent) are incompatible with that of teacher in the public schools."

The opinion cites Ruling Case Law, the text of which is substantially the same as now found in 63 Am.Jur.2d, Public Officers and Employees, § 74, p. 676, where it is said:

"One of the most important tests as to whether offices are incompatible is found in the principle that the incompatibility is recognized whenever one is subordinate to the other in some of its important and principal duties, and subject in some degree to the other's revisory power. Thus, two offices are incompatible where the incumbent of the one has the power of appointment to the other office or the power to remove its incumbent, even though the contingency on which the power may be exercised is remote."

In the earlier case of Hermann v. Lampe (1917), 175 Ky. 109, 194 S.W. 122, 126, the Kentucky court quotes with approval from the early and leading case of People ex rel. Ryan v. Green (N.Y.C.P. 1873), 46 How.Pr. 169, where with respect to the test of incompatibility of offices at common law it is said that such incompatibility existed "when, their being subordinate and interfering with each other, it induces a presumption that they cannot be executed with impartiality and honesty". The Kentucky court continued:

"This seems to be a sound rule to be adopted in determining whether an employment which one accepts is incompatible with the duties of an office which he holds."

Kentucky has long had a statute (now § 61.090 Ky.Rev.Stat.Off.Ed.) which pro-

vides that "acceptance by one in office of another office or employment incompatible with the one he holds shall operate to vacate the first." However, in *Knuckles*, the court, after reference to *Hermann* and other cases, makes this observation (114 S.W. 2d p. 514):

> "Furthermore, the same opinions, as well as the texts, apply the consequences of incompatibility (either at common law or under the Constitution or statutes) not only as between public positions expressly designated as an 'office', but such incompatibility is also applied, with the same consequences, as between what might be termed public *employees* when the functions to be performed by the incumbent partakes of the nature of the duties and functions of an officer, although the incumbent might be designated as only an 'employee', or he may be so regarded by necessary inference."

In support of his contention that the common-law rule against holding incompatible offices must be limited to the holding of offices within the strict meaning of that term, Haskins cites 63 Am.Jur.2d, Public Officers and Employees, § 64, p. 669, where it is said:

> "The prohibition against one person holding more than one office at the same time has reference to offices, as distinguished from positions in the public service that do not rise to the dignity of offices. It does not extend to a position which is a mere agency or employment, but which constitute an employment as distinguished from a public office."

We have examined the cases cited[2] and while they support the text we find no is-

sue of incompatibility involved. The question was whether constitutional prohibitions against holding dual offices (e. g. under the federal and state governments) prohibit the holding of the second office. The question of incompatibility presents a much more serious question and since it is one of first impression[3] we feel that we may properly adopt that rule which is most consistent with the purpose of the rule and the reasons for its application. In this respect we are aided by a number of decisions from New Jersey, which in our judgment clearly delineate the development of a legal principle through successive legal decisions.

The first decision of interest is Wilentz ex rel. Golat v. Stanger (1943), 129 N.J. L. 606, 30 A.2d 885, 889–891, wherein a member of the legislature had been appointed counsel to the milk control board. Refusing to apply the rule against incompatibility to vacate the office of legislator, the court said:

> "In compatibility there certainly was, and we have already so held; but appellant has not demonstrated that the common law holdings were applied to posts outside the class of what our courts have held to be offices."

The court accepted an earlier definition of the same court that

> "An office is a place in a governmental system created or recognized by the law of the state which either directly or by delegated authority assigns to the incumbent thereof the continuous performance of certain permanent public duties,"[4]

and also that it "is invested with some portion of the sovereign functions of the gov-

---

2. Tipton v. Sands (1936), 103 Mont. 1, 60 P.2d 662, 669; McIntosh v. Hutchinson (1936), 187 Wash. 61, 59 P.2d 1117, 1118; Livingston v. Ogilvie (1969), 43 Ill.2d 9, 250 N.E.2d 138, 143.

3. We do not overlook Baker v. Board of Commissioners of Crook County (1900), 9 Wyo. 51, 54, 59 P. 797, in which it was said in passing that "as the county physician is not legally an officer of the county, no question

is presented of incompatibility of offices which would forbid the incumbency of the two positions of coroner and county physician by the same person." No question of incompatibility had been raised in the case, there was no decision on the point, and we think the remark can not be said to represent a consideration of the issue.

4. Fredericks v. Board of Health, 82 N.J.L. 200, 82 A. 528.

ernment to be exercised by him for the benefit of the public." [5]

Although *Wilentz* has never been specifically overruled, its authority as a limitation on the application of the rule only to offices as such has been weakened if not destroyed by subsequent decisions of the New Jersey appellate courts. Two cases are particularly in point: Reilly v. Ozzard (1960), 33 N.J. 529, 166 A.2d 360, 366, and Ahto v. Weaver (1963), 39 N.J. 418, 189 A.2d 27, 33. In both these cases the Supreme Court of New Jersey was able to avoid a direct ruling upon the question by holding that the allegedly conflicting position was an office but the rule of *Wilentz* is seriously questioned. In *Reilly,* the court referred to the contention for limited application as set forth in *Wilentz,* and said:

> "It is contended the doctrine applies only to 'offices' and the post of township attorney is not of that character.

> "That the doctrine is limited to 'offices' was held in Wilentz ex rel. Golat v. Stanger, supra, 129 N.J.L. 606, 30 A.2d 885. Plaintiff argues with much force that distinctions separating 'office' from 'position' and 'employment', even if useful in other situations, are here inappropriate. * * * The reasonableness of a classification depends upon the objective. Women may be differentiated from men in matters of health but not with respect to larceny or drunken driving. The question is whether the public evil which the doctrine of incompatibility was designed to meet is any less because one of the posts is other than an 'office'."

In *Ahto* the same contention was made, and the court, after quoting the definition from *Fredericks,* said:

> "Granting that the doctrine is limited to 'offices', the appropriate definition of the term must have regard to the public evil the rule is designed to remedy. See Reilly v. Ozzard, supra (33 N.J. at p.

541, 166 A.2d at p. 366). While the quoted requisites have been used as a criterion in incompatibility cases, e. g., Wilentz ex rel. Golat v. Stanger, 129 N.J.L. 606, 30 A.2d 885 (E. & A.1943), Ozzard indicated they were not exclusive or controlling."

The New Jersey Supreme Court does not appear further to have considered this question. However, it is highly significant that in Visotcky v. City Council of the City of Garfield (1971), 113 N.J.Super. 263, 273 A.2d 597, 599, the possibility that the rule should be limited to offices is not even discussed. Holding invalid the appointment of a teacher to membership on the board of education by whom the teacher was employed, the court said:

> "Common sense dictates the conclusion that being a school teacher and a member of a board of education in the same school district is patently incompatible. 'The members of the board of education of a municipality are public officers holding positions of public trust. They stand in a fiduciary relationship to the people whom they have been appointed or elected to serve.' Cullum v. Board of Education, North Bergen Tp., 27 N.J.Super. 243, 248, 99 A.2d 323, 326, (App. Div.1953). A teacher's position is also one of public service, but the teacher is an employee whereas the board of education is the employer. There are many potential conflicts of interest between the two. 'It is no answer to say that the conflict in duties outlined above may never in fact arise. It is enough that it may * * *.' Jones v. MacDonald, 33 N.J. 132, 138, 162 A.2d 817, 820, (1960). The widespread differences throughout our State in matters of salary negotiations, with resultant 'job actions' by teachers and injunctions obtained by boards of education against teacher activities, remind us vividly of the conflicts between teachers and boards of education. A teacher's self-interest can readily run counter to a board member's

---

5. Mechem, Public Offices and Officers (1890), p. 1, § 1.

loyalty to the public. We entertain no doubt that an individual may not properly act contemporaneously as a teacher and a member of the board of education in the same school district. The positions are incompatible and represent intolerable potential conflicts of interest." [6]

Later decisions of the Superior Court of New Jersey have clearly taken the position that it is the incompatibility of the two functions and not the classification as office or an employment that is important. In O'Connor v. Calandrillo (1971), 117 N. J.Super. 586, 285 A.2d 275, 277 (aff'd by App.Div., 121 N.J.Super. 135, 296 A.2d 326), it is said:

"Regardless of the existence of specific statutory prohibitions, the common law doctrine of incompatibility has developed as a matter of public policy in order to insure that there be the appearance as well as the actuality of impartiality and undivided loyalty. Ahto v. Weaver, 39 N.J. 418, 433–434, 189 A.2d 27 (1963) (dissenting opinion). Incompatibility exists 'where in the established governmental scheme one office is subordinate to another, or subject to its supervision or control, or the duties clash, inviting the incumbent to prefer one obligation to another.' * * * If the duties of the two offices are such that when 'placed in one person they might disserve the public interests, or if the respective offices might or will conflict even on rare occasions, it is sufficient to declare them legally incompatible.' De Feo v. Smith, 17 N.J. 183, 189, 110 A.2d 553, 556 (1955)."

* * * * * *

"Each of the additional posts assumed by these commissioners is subordinate to the board of commissioners of which they are members, and each of them is subject to the control of that board. This control is real and meaningful, for it affects the very existence of their posi-tions and the emoluments received by them. *For them to continue in these dual positions would deprive the citizens of the municipality of the independent judgment of these elected officials whenever an issue might arise affecting their respective jobs.* And this public deprivation is not only measured by the absence of independence of judgment of the three individuals involved but also by their influence upon each other and their other colleagues on the board—an influence which has already manifested itself in the manner in which the appointments came into being in January 1971. See De Feo v. Smith, *supra,* 17 N.J. at 189, 110 A.2d 553. (Emphasis supplied.)

"It is therefore determined on the basis of the applicable common law doctrine that the dual posts held by Calandrillo, Lombardo and Lagomarsino are legally incompatible and that they cannot continue to hold the same."

Kaufman v. Pannuccio (1972), 121 N.J. Super. 27, 295 A.2d 639, 641, held that the assistant tax assessor and a lieutenant in the police force could not continue as such while being members of the city council. Again without concern for semantics and citing *Reilly* and *O'Connor,* among others, the court says:

"Here we are clear that Russo's position as a lieutenant in the police department is incompatible with his position as a member of the municipal council. O'Connor v. Calandrillo, supra, 117 N.J. Super. at 590–591, 285 A.2d 275. As a member of the council he would be empowered and called upon to pass upon matters involving salary, tenure and promotion of members of the police department, including himself."

This perhaps overextended discussion of the development of the case law in New Jersey demonstrates that without articula-

6. We note that N.J.S.A. 18A:12, art. I, entitled "Qualifications" was said to "lend support to the conclusion that one may not qualify as a member of a board of education, if he is at the same time bound by a contract with the board." Section 2 of the article provided that "No member of any board of education shall be interested directly or indirectly in any contract with or claim against the board."

tion of the process, and in this instance without too much concern for definition, the New Jersey courts have taken a common-law principle of perhaps limited application and expanded it to the place where the question of holding public office vis-à-vis holding public employment is not a matter of definition of the office but a question of the public interest to be served.[7]

While the New Jersey courts have not expressly indicated that they were extending or expanding the common law pertaining to incompatibility, such a result we think is not improper. From earliest times it has been recognized, as in the words of Sir Edward Coke, that "Reason is the life of the law; nay the common law itself is nothing else but reason." In Funk v. United States (1933), 290 U.S. 371, 383, 54 S. Ct. 212, 78 L.Ed. 369, the Supreme Court of the United States said that capacity for growth and adaptation is the "peculiar boast and excellence of the common law", and continued:

"It has been said so often as to have become axiomatic that the common law is not immutable but flexible, and by its own principles adopts itself to varying conditions."

This Court has recognized this principle of flexibility of the common law in In re Roberts' Estate (1943), 58 Wyo. 438, 464, 133 P.2d 492, 501, where it was said:

"* * * The common law was developed from its beginning largely through public policy, as it was conceived by the courts to be and then by them declared. Holmes, Common Law, passim; see, e. g., pp. 78, 106, 154–156, 161, 181, 198, 202–205. He states on p. 35 that 'every important principle which is developed in

litigation is at fact and at bottom the result of more or less definitely understood views of public policy.' Time and again courts have declared a rule of law as based on public policy, established, in their opinion, either by legislation, by custom or usage, or by general public opinion."

■ Except for the New Jersey decisions there seems to be a dearth of authority on whether the principle of incompatibility can be applied except to offices. These New Jersey decisions, as well as many others where there was no question but that offices were involved, uniformly declare that it is inimical to the public interest for one in public employment to be both the employer and the employee or the supervisor and the supervised. Subordination is the key word. After considerable research and careful consideration of the reason and basis for the rule against incompatibility, a majority of the Court are convinced that we should not let ourselves be bound by technical definitions of the word office and while we do not say that there may not be cases in which the definition may be important, we think that this case should not turn on that point. We therefore hold that employment as teacher and office as member of the board of trustees of the school district are incompatible within the meaning and intent of the common-law rule.

### Amendment of the Conflict of Interest Statutes

■ Haskins contends, however, that any question of incompatibility of office or position has been removed from the case by reason of the 1969 amendment of § 6–178, W.S.1957 and § 9–680, W.S.1957, C.

---

7. We note that the application of the incompatibility rule was finally recognized and made a matter of statutory law by the enactment of N.J.S.A. 18A:6–8.4, specifically stating that no person employed by a public educational system or employed in a professional educational capacity should be disqualified by reason of such employment from holding any elective or appointive state, county, or municipal office "excepting as member of the board or body by which he is employed." We do not think this legislative enactment negates our construction of the development of the common-law rule by the courts of New Jersey but that it does indicate legislative as well as judicial disapproval of a teacher being a member of his governing board of trustees.

1965. As we understand the argument, these amendments provide an exception to the previously existing blanket rule forbidding a public officer to contract with the public body which he serves and make such a contract possible, provided only that certain qualifications are complied with. Under Haskins' thesis all that has to be guarded against is personal and financial interest of the contracting officer, and this is done by providing that he shall not participate in the negotiations, voting or performance of the contract.

Relators assert that it is clear that the exceptions provided by the amendments do not allow a member of the governing board to be employed by that body. While this is by no means self-evident, we do think that analysis of the principles pertaining to conflict of interest and its relation to the rule against incompatibility will show that while the legislature intended to permit a qualified exception to conflict of interest prohibitions, it would be an unwarranted construction of the amendatory legislation to hold that it eliminated any question of incompatibility.

Haskins has argued that conflict of interest which has been condemned is a pecuniary and proprietary interest. In the usual contract situation, as for example, a contract for the construction of a school building or the designation of a bank depository, the board member who has a personal interest may disclose his interest, absent himself from the consideration of and voting on the contract, and thereafter take no part as a board member in connection with the performance of the contract, thus eliminating any claim of conflict of interest as to that matter. But that is not the problem here presented.

An officer or employee carrying out a function of the board he serves is continually and inescapably under the jurisdiction and authority of that board. He is hired by that board, whether through individual or group negotiation, he may under certain restrictions be fired by it, and he is constantly subject to its supervision. In all good faith and without thought of personal gain, his goals and aims in performance of his teaching duties may be at variance with the resources of his district and the general standards of the community. We do not say this is wrong but a person of independent judgment must reconcile these conflicts. These are conflicts which go to the entire scope of his function as a board member and teacher. Paraphrasing the language in *O'Connor*, for Haskins to hold office as trustee while acting as teacher would deprive the citizens of the school district of the independent judgment of a full and impartial board of trustees elected to represent the entire public interest. We have no doubt such dual positions are incompatible and are not to be disposed of on a mere consideration of financial conflict of interest.

If the amendments to the foregoing statutes were to be held effective in eliminating any questions of incompatibility, a member of the city council could be the city attorney, or chief of police. Such a construction of the statute, merely because the particular member may absent himself from the discussion and voting on his own contract, is in our opinion not justified. We also note that the need of the community for continuing exercise of judgment and the making of decisions on the basis of give-and-take discussion of independent minds is not served best where one of the board must at frequent intervals take no part because of conflict. To the extent that the legislature has expressly permitted such conflict, we cannot and do not deny its effectiveness, but we do not have to extend those conflicts by construction. Without setting the limits of the area in which conflicts of interest are not to destroy the right of contract, then, we hold that the incompatibility between office of member of the board of trustees of the school district and employment as teacher in that district is not eliminated by the amendment of the statutes.

### Entry of Summary Judgment

Although Haskins was the first one to move for summary judgment on the basis that no genuine issue of fact existed and although he continues to assert that he was entitled to summary judgment, he contends that the affidavits are in direct conflict and no court could conscientiously rule for the relators and enter judgment as a matter of law. We have carefully examined the affidavits of the four relators submitted in support of the motion for summary judgment, and have compared those affidavits with Haskins' affidavit. From this analysis we conclude that over a period of 13½ months there were at least 12 specific instances where Haskins was involved in a conflict. In three instances Haskins voted, claiming that he was not in a conflict; in three instances he remained in the meeting but abstained from voting; in three instances he absented himself from the meeting; and in three instances where no vote was taken Haskins remained present, abstaining from discussion in one of those instances. Of those 12 instances, six related to finances of the district, six to other teachers and administrators and two of these related directly to Haskins.

The dispute, then, is not as to the facts of existing conflicts, but rather relates to the interpretation which is placed on these facts: Haskins contending that he was able to resolve all alleged conflicts without detriment to his office or to the school district; the relators contending that these instances show harm to the district in the conduct of its general business.

We believe that the undisputed facts established by the affidavits are sufficient to establish that the employment as teacher is subordinate to and under the supervision of the board of trustees; that a member of the board would have the right to hire and fire; that there are many instances in which Haskins' self-interest as a teacher has and will run counter to the board's loyalty to the public; that Haskins as a trustee would be supervising himself and at the same time supervising other teachers and administrative personnel who in turn have some supervision or authority over Haskins as a teacher.

■ We are therefore of the opinion that there is in this case more than a mere pecuniary conflict of interest, not likely to occur very often and which can easily be avoided by abstention. There is present a conflict in the duties of the two positions which constitutes an incompatibility which is not in the best interest of the school district or the general public and which, under properly interpreted principles of common law, should not be permitted to exist.

### Ineligibility for Office as Trustee

■ A final question relates to the fact that usually the application of the common-law rule against incompatibility operates to vacate the first office, or in this case, position, held to be incompatible. Haskins' employment, like that in *Visotcky*, was under contract and he was not

"legally free to abandon one public job for another. Secondly, he kept his former position as a teacher and enjoyed the emoluments flowing therefrom."

In that case Visotcky had offered to resign, conditioned upon an adverse determination of the action, which was held ineffective as an election. In this case he has consistently asserted his right to retain his office as trustee and employment as teacher. The matter is thus brought within the exception to the rule, as outlined in the annotation in 1917A L.R.A. 216, 227:

"that where the office first held cannot be resigned by the officer, the second office, and not the first, is the one which he loses."

Consistently with our admonition in State ex rel. Pape v. Hockett (1944), 61 Wyo. 145, 168, 156 P.2d 299, 307, that "public office may not be vacated by judicial decree unless the disqualification be clear and imperative", we hold that the disqualification is that and that the judgment of the district court must be affirmed.

McEWAN, Justice (concurring).

I concur in the result and while I do not take issue with that which is said in the

opinion by my brother McClintock, I do feel obligated to make some comments. According to Haskins he felt justified in running for the board while employed by the district as a continuing contract teacher. His belief that he was entitled to run for and serve on the board while employed as a teacher was bolstered by an attorney general's opinion, No. 13, dated May 27, 1970, which found that a teacher could serve as a member of the school board. Thus he took all reasonable steps to determine that election to the school board was permissible under Wyoming law.

It should also be noted that Haskins was a teacher in the district and had been so for 15 years before he was elected. The electorate knew—or should have known—that he was a teacher. Knowing this they still elected him. The voters then determined their own public policy and, in effect, said that it was all right with them for Haskins to be both teacher and board member. While it might reasonably be said that it is unwise for a teacher to also be on the board, I would not presume to say to the voters they could not do this because others may deem it to be unwise. It seems to me that in this day when we are attempting to retain and regain some local control we should permit the people to determine their own destiny subject only to constitutionally permitted legislative restraints.

I am convinced that Haskins entered upon election to the school board in all good faith and for laudable purposes and the voters by electing him showed that they had faith and confidence in him. However, I am convinced that if the statutes are interpreted as he contended an untenable condition could arise. He agreed that in order to serve on the board he had to comply with the statute and refrain from participation in any decisions of the board in which he had a conflict. The parties agreed that in general such conflicts included all negotiations with teachers and especially salaries, fringe benefits and other teaching conditions such as hours, etc. Section 6–178, W.S.1957, Cum.Supp.1973, provides:

" * * * that if any [trustee of any school district] * * * shall be interested as aforesaid in any such contract, but shall disclose the nature and extent thereof to all the contracting parties concerned therewith and shall absent himself during the considerations and vote thereon * * *, then the said acts shall not be unlawful under this section * * *."

Section 21.1–21, W.S.1957, Cum.Supp. 1973, provides:

"The board of trustees of a school district shall be the governing body of the school district. A majority of the number of members of the board of trustees shall constitute a quorum for the transaction of business at any meeting of the board of trustees. No action of the board of trustees shall be valid unless such action shall receive the approval of a majority of the members elected to the board of trustees."

The statute which he contended permitted him to serve on the board made no mention of teachers as board members and therefore no limitation as to the number of teacher board members was stated, and I fail to see how a limit could be implied. Therefore, if Haskins as a teacher could serve other teachers could also become members.

If teachers constituted all or a majority of the members of the board of trustees the board could not transact any business dealing with teachers, including salary negotiations, because teacher members would have to absent themselves and there could be no majority action. If a school board could not set teachers' salaries and other contract terms it could not function. No reasonable argument could be made that the legislature intended to create a situation wherein a school board would be unable to perform its duties as the governing body of the school district.

McINTYRE, J., dissents.