

# The Attorney General of Texas

September 13, 1984

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

01 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Gibson D. (Gib) Lewis
Speaker
Texas House of Representatives
P. O. Box 2910
Austin, Texas     78769

Opinion No. JM-203

Re:  Whether certain public
officers and employees may
be appointed to the interim
State Board of Education

Dear Speaker Lewis:

Your letter requesting an opinion from this office reads in part:

> As you know, the Legislative Education Board is . . . review[ing] the qualifications of individuals whose names may be submitted to the governor for appointment to the transitional State Board of Education created by House Bill No. 72 from the recent special session.
>
> Prior to House Bill No. 72, officers and employees of the state or a political subdivision of the state were not eligible to serve on the State Board of Education.  Educ. Code §11.22(b). The legislature eliminated the disqualification on the basis of <u>employment</u> with the state or a political subdivision (article I, Part B, section 2, House Bill No. 72), and specifically provided that the disqualification on the basis of holding an office with the state or a political subdivision of the state does not apply to persons appointed to the transitional board (article I, Part B, section 4(b), House Bill No. 72).
>
> However, we understand that a common law doctrine relating to incompatible offices may prevent some persons from holding their current position and membership on the State Board of Education at the same time, even though those persons are not statutorily ineligible. Specifically, we are concerned about the following categories:
>
> (1) public school professional employees who are certified under state law and State Board of

Education rules (this would include teachers, counselors, administrators, and other professional positions);

(2) school district trustees;

(3) junior college faculty and administrators;

(4) junior college trustees;

(5) senior college or university faculty and administrators, particularly those involved in teacher education programs;

(6) senior college or university regents;

(7) regional education service center employees; and

(8) Central Education Agency officers and employees.

As speaker of the house and chairman of the Legislative Education Board, I request your official opinion in regard to the ability of those persons listed above to hold both the listed position and membership on the State Board of Education.

House Bill No. 72 enacted by the second called session of the Sixty-eighth Legislature institutes a number of reforms applicable to the public education system in Texas. Acts 1984, 68th Leg., 2nd C.S., ch. 28, at 269. Among the changes: the previously existing, elected State Board of Education is to be abolished and replaced by a transitional board of fifteen members to be appointed after the provision takes effect, i.e., when approval of the United States Department of Justice is obtained. The transitional board members are to serve until a new, elected board takes office on January 1, 1989.

House Bill No. 72, among other things, amends section 11.22 of the Education Code specifying the qualifications for membership on the State Board of Education. Prior to such action, subsection (b) thereof read as follows:

(b) No person shall be eligible for election to or serve on the board if he holds an office with the State of Texas or any political subdivision thereof, or holds employment with or receives any compensation for services from the state or any political subdivision thereof (except retirement benefits paid by the State of Texas or the federal

> government), or engages in organized public
> educational activity. (Emphasis added).

House Bill No. 72 changed it to read instead:

> No person shall be eligible for election to or
> serve on the board if he holds an _office_ with the
> State of Texas or any political subdivision
> thereof.

Acts 1984, _supra_, at 279.

The change makes the statute applicable to officers only; the statutory restriction on the eligibility of employees and independent contractors to the board has been dropped. But even with respect to officers, House Bill No. 72 provides in its fourth section, which establishes the interim board, that "Section 11.22(b), Education Code, as amended by this Act, does not apply to a person appointed under this section." Acts 1984, _supra_, §4(b), at 282.

It is clear to us that the exemption of interim board members from the strictures of section 11.22(b) of the Education Code was not intended to exempt them from _all_ dual office prohibitions. Restrictions that prevent a person from holding more than one public position or office at the same time may originate in either constitutional, statutory, or common law. See 47 Tex. Jur. 2d, Public Officers §§27 _et seq._ (1963). Article III, section 18, of the Texas Constitution, for instance, makes a legislator ineligible to "any office or place, the appointment to which may be made, in whole or in part, by either branch of the Legislature. . . ." The legislature _could not_ exempt interim board members from the article III, section 18 constitutional prohibition, and we ascribe to it no intent to do so. Similarly, we do not believe the legislature intended to exempt them from the common law bar of incompatibility.

The common law doctrine of incompatibility, briefly described, prevents one person from holding two offices if the duties are inconsistent or in conflict, or if one office is subordinate to the other. Thomas v. Abernathy County Line Independent School District, 290 S.W. 152 (Tex. Comm'n App. 1927, judgmt adopted); Kugle v. Glen Rose Independent School District No. 1, 50 S.W.2d 375 (Tex. Civ. App. - Waco 1932) rev'd on other grounds sub nom. Pruitt v. Glen Rose Independent School District No. 1, 84 S.W.2d 1004 (Tex. 1935). The doctrine has been held to bar a public employee from holding a public office which appoints, supervises, and controls the employee. See Ehlinger v. Clark, 8 S.W.2d 666 (Tex. 1928); Attorney General Letter Advisory No. 114 (1975). It protects the integrity of state institutions by promoting impartial service by public officials.

In Attorney General Letter Advisory No. 56 (1973) this office by implication interpreted section 11.22(b) of the Education Code as a

bar to dual office holding that is separate from (and in addition to) the common law bar of incompatibility, stating:

> It is our opinion, therefore, that because of the express provisions of §11.22(b) of the Education Code, and/or the common law doctrine of incompatibility, one person may not serve at the same time as a member of the Board of Mental Health and Mental Retardation and the State Board of Education.

The passage of House Bill No. 72 exhibits no intent that the statute now be construed otherwise.

We think the Letter Advisory No. 56 construction of section 11.22(b) is correct and that the legislature so regarded it. The statute is intended to complement and extend article XVI, section 40 of the Texas Constitution, which prohibits dual office holding -- but only with respect to offices of emolument. The former language of section 11.22(b) prohibited the simultaneous holding of membership on the State Board of Education by another office holder whether or not either office was one of emolument.

It is difficult to argue, as some do, that the very existence of the statute indicates an intent that any common law rule regarding dual office holding be superseded. The existence of the article XVI, section 40 constitutional bar to dual office holding has not been thought to replace or invalidate the common law proscription against incompatibility, and neither should the existence of the section 11.22(b) statutory bar, in our opinion. It is an additional impediment to the simultaneous holding of two offices. Although House Bill No. 72 makes section 11.22(b) of the Education Code inapplicable to members of the transitional board, we do not think it affects the operability of the common law doctrine. Consequently, we turn to the specific offices and positions about which you inquire.

### TRUSTEES, REGENTS

To determine whether the various offices and employments you name are incompatible with service on the board, we must examine this doctrine at greater length. We should state at the outset, however, that a court, with its power to receive and evaluate evidence, is in a better position to decide matters of incompatibility than is the Attorney General in issuing a legal opinion. Although we are not always provided sufficient information to resolve such questions, we can at least provide guidelines to be used in resolving them.

Texas courts have discussed the common law doctrine of incompatibility only in relation to officers. Opinions of this office and judicial decisions in other states have, however, applied it to employees. The court in Thomas v. Abernathy County Line Independent

School District, 290 S.W. at 153, made the following observation:

> [T]he offices of school trustee and alderman are incompatible; for under our system there are in the city council or board of aldermen various directory or supervisory powers exertable in respect to school property located within the city or town and in respect to the duties of school trustee performable within its limits -- e.g., there might well arise a conflict of discretion or duty in respect to health, quarantine, sanitary, and fire prevention regulations. See articles 1015, 1067, 1071, R.S. 1925. If the same person could be a school trustee and a member of the city council or board of aldermen at the same time, school policies, in many important respects, would be subject to direction of the council or aldermen instead of to that of the trustees.

Another Texas court determined that two offices were not incompatible:

> It is quite obvious from the allegations in the information, when considered, as they must be, with relevant and controlling statutory and charter provisions, that the offices of school trustee and city tax assessor have no relation to each other. The duties of the two offices are wholly unrelated, are in no manner inconsistent, [and] are never in conflict. Neither officer is accountable to the other, nor under his dominion. Neither is subordinate to the other, nor has any power or right to interfere with the other in the performance of any duty. The offices are therefore not inconsistent or incompatible. . . .

State v. Martin, 51 S.W.2d 815, 817 (Tex. Civ. App. - San Antonio 1932, no writ). There are two aspects of incompatibility. First, that an office represents interests in conflict with those represented by the other, and, second, that the law makes one office subordinate to and accountable to another.

These authorities provide a sufficient basis to answer your questions about officers. School district trustees are public officers. Thomas v. Aberrathy County Line Independent School District, supra. The State Board of Education has numerous powers and duties which conflict with the legal role of school trustees. The trustees "shall have the exclusive power to manage and govern the public free schools of the district." Educ. Code §23.26(b). The State Board of Education, however, has numerous regulatory and supervisory powers over school districts. For example, the State

Board of Education, with two other state agencies, adopts and enforces regulations governing design, equipment, construction, and operation of school buses owned and operated by a school district. Educ. Code §11.12. Adult education

> shall be provided by public school districts . . . in accordance with state statute and the regulations and standards adopted by the State Board of Education.

Educ. Code §11.18(c) (as amended by H.B. No. 72; see Acts 1984, supra, at 290). The State Board adopts standards and a process for accrediting public schools and may have to revoke the accreditation of a non-complying school district. Educ. Code §§11.26(c)(5) (as amended by H.B. No. 72, see Acts 1984, supra, at 292); 21.753-21.757 (added by H.B. No. 72; see Acts 1984, supra, at 403-05). Goals for the public school system are to be established by the State Board. Sec. 11.26(b) (as amended by H.B. No. 72; see Acts 1984, supra, at 292). School districts must report to the board the fiscal and management information required by statute. See Educ. Code §23.48. There are other statutes which subordinate boards of school trustees to State Board control and place the two offices in conflict. See, e.g., Educ. Code §§21.721(d) (alternatives to social promotion) (as amended by H.B. No. 72; see Acts 1984, supra, at 393); 21.111(a), (b) (Vocational Education) (as amended by H.B. No. 72; see Acts 1984, supra, at 296); 23.29(b) (Board establishes criteria for sale of minerals by school district). The offices are incompatible under common law.

Junior college trustees are also officers. Educ. Code §§130.002, 130.082, 130.084; Attorney General Letter Advisory No. 149 (1977). The State Board of Education adopts standards and regulations for approving adult education programs in junior colleges. Educ. Code §11.18(c), supra. It is involved in the state-level administration of technical-vocational education programs in junior colleges. Educ. Code §11.24(a); see also Educ. Code §§135.03-135.04; Attorney General Opinions H-929 (1977); H-580, H-541 (1975). Junior college trustees when implementing these programs are subordinate to the State Board's authority. The office of junior college trustee is therefore incompatible with the office of State Board member, and one person may not hold both offices.

Regents of state colleges and universities are officers subject to the doctrine of incompatibility. The State Board has authority over standards for approving university adult education programs. Educ. Code §11.18(c), supra. It also establishes standards for approving teacher education programs at colleges and universities. Educ. Code §13.032(a). See also Educ. Code §13.032(e) (Board prescribes competency exam for admission to approved teacher education program). If the commissioner of education determines that a teacher education program does not meet the board's standards, he may

institute sanctions, including recommending that the board put the program on probation. Educ. Code §13.033 (added by H.B. No. 72; see Acts 1984, supra, at 378). If the program does not correct its deficiencies by the end of the 24-month probation, the State Board is to revoke its accreditation. Id. The governing bodies of colleges and universities authorized to establish adult education or teacher education programs are thus subject to the State Board's direction and control in connection with the programs. The regents of public colleges and universities with this authority hold an office incompatible at common law with the office of State Board member. See also Educ. Code §21.921 (added by H.B. No. 72; see Acts 1984, supra, at 402) (UIL, which is part of the University of Texas at Austin, must submit rules and procedures for board approval).

## EMPLOYEES

Before turning to the public employments you inquire about, we will consider the rationale for extending the common law doctrine of incompatible offices to employments. Attorney General Opinion V-303 (1947) discusses the doctrine as follows:

> At common law (adopted as the law of Texas in Article 1, R.C.S., when not inconsistent with our statutes or Constitution), 'there is no limit to the number of offices which may be held simultaneously by the same person, provided that neither of them is incompatible with any other. . . .' Throop, Public Officers, p. 33. 'The inconsistency . . . does not consist in the physical impossibility to discharge the duties of both offices, but lies rather in a conflict of interest, as where one is subordinate to the other . . . or has the power to remove the incumbent of the other, or to audit the accounts of the other.' [citing 46 C.J. at 941].

> Meecham on Public Offices and Officers, p. 269, announces the rule to be that: 'the mere physical impossibility of one person's performing the duties of the two offices as from the lack of time or the inability to be in two places at the same moment, is not the incompatibility here referred to. It must be an inconsistency in the functions of the two offices, as judge and clerk of the same court, claimant and auditor, and the like.'

The two Texas judicial decisions address incompatible offices, as do the authorities cited in the quotation above. Attorney General Opinion V-303 (1947), after stating the rule on incompatible offices, proceeds to consider whether a State Highway Department employee may

work as an independent contractor for a school district. It found the two jobs not incompatible, but it overlooked the threshold question of whether the common law doctrine was even relevant to public employment or work as an independent contractor for a political subdivision.

Other opinions have assumed that the common law doctrine of incompatible offices applies to employments without citing authority for thus expanding the doctrine. See, e.g., Attorney General Opinions MW-415 (1981) (full-time and part-time public employments); H-665 (1975) (paid firemen and volunteer firemen); V-1346 (1951) (justice of the peace and county laborer); V-345 (1947) (employee of one state agency and independent contractor for another); Attorney General Letter Advisory Nos. 137 (1977) (probation officer and college instructor); 62 (1973) (school trustee and employee of Texas Rehabilitation Commission); 30 (1973) (college professor and researcher for Constitutional Revision Commission). See also Attorney General Opinions V-24 (1947) and O-2929 (1942) (employment with state agency "incompatible" with private employment).

These opinions expand the common law doctrine of incompatibility to employments without explanation or citation of authority. The conclusions are not for that reason necessarily incorrect. Some of the opinions which use the doctrine imprecisely find no conflict between the two positions, while other opinions rely on additional rules developed to prevent conflicts of interest.

In contrast, Letter Advisory No. 114 (1975) relies on case law from other states to conclude that the office of school trustee is incompatible with employment as a teacher in the same district. See Haskins v. State, 516 P.2d 1171 (Wyo. 1973); 70 ALR 3d 1171 (1976). Other courts faced with this issue have concluded that an insuperable conflict of interest prevents an employee school teacher from serving on the employer school board. Annot. 70 ALR3d 1188 (1976), see Knuckles v. Board of Education, 114 S.W.2d 511 (Ky. 1938); Clifford v. School Committee of Lynn, 175 N.E. 634 (Mass. 1931); Visotcky v. Garfield, 273 A.2d 597 (NJ Super. Ct. App. Div. 1971); Tarpo v. Bowman Public School District # 1, 232 N.W.2d 67 (N.D. 1975). Attorney General Letter Advisory No. 114 relied on Haskins v. State for its determination that the policies underlying the common law doctrine justified its expansion to prohibit an employee from serving as the employing officer. The Haskins court reviewed the law of other states and concluded that

> [t]hese [sister state] decisions . . . uniformly declare that it is inimical to the public interest for one in public employment to be both the employer and the employee or the supervisor and the supervised. Subordination is the key word. After considerable research and careful consideration of the reason and basis for the rule against incompatibility, a majority of the Court

are convinced that we should not ourselves be
bound by technical definitions of the word
office . . . . (Emphasis added).

516 P.2d at 1178.

Texas courts have reached similar results based in part on other
common law rules. The Texas Supreme Court has recognized that all
officers who have appointive power are disqualified from appointing
themselves. Ehlinger v. Clark, 8 S.W.2d 666 (Tex. 1928). In Starr
County v. Guerra, 297 S.W.2d 379 (Tex. Civ. App. - San Antonio 1956,
no writ), the court found that the commissioners court could not
employ a member of the court as road commissioner for the entire
county; such employment was contrary to article 2340, V.T.C.S., and to
the "policy of the law." It was in effect an effort by a public
officer to contract with himself. See Cornutt v. Clay County, 75
S.W.2d 299 (Tex. Civ. App. - Eastland 1934, no writ); Knippa v.
Stewart Iron Works, 66 S.W. 322 (Tex. Civ. App. - 1902, no writ). The
Texas courts have not relied on the common law doctrine of incompati-
bility to prevent employees from holding offices with inconsistent
duties, but they have reached such results relying on other conflict
of interest concepts. The reasoning and result of Letter Advisory No.
114 is certainly consistent with Texas case law.

Your question thus requires us to consider whether the courts
would extend incompatibility to prohibit various employees from
serving on the transitional board. You inquire about the following
classes of employees:

(1) public school professional employees who
are certified under state law and State Board of
Education rules (this would include teachers,
counselors, administrators, and other professional
positions);

. . . .

(3) junior college faculty and administrators;

. . . .

(5) senior college or university faculty and
administrators, particularly those involved in
teacher education programs;

. . . .

(7) regional education service center
employees; and

(8) Central Education Agency . . . employees.

You wish us to determine whether the duties of each class of employees are incompatible with those of State Board of Education members. A question of incompatibility is primarily a legal question, but its resolution may require information not given in the relevant statutes. For example, if two offices serve jurisdictions which overlap geographically, their duties are much more likely to conflict than if they serve geographically separate areas. See Thomas v. Abernathy County Line Independent School District, supra; compare Attorney General Opinion JM-133 (1984) with Attorney General Letter Advisory No. 149 (1977). Information that particular conflicts have actually developed between an office and an employment makes it easier to point out conflicting legal duties. See Haskins v. State, supra. This office cannot definitively resolve each incompatibility question, but we can offer general guidance in this area.

The legal differences between an officer and an employee suggest why the incompatibility doctrine has traditionally applied only to officers and has been only cautiously extended to the case of an employee and the employing officer. A public officer, as distinguished from a public employee, has the authority to exercise a sovereign function of the government largely independent of the control of others. Aldine Independent School District v. Standley, 280 S.W.2d 578 (Tex. 1955); Dunbar v. Brazoria County, 224 S.W.2d 738 (Tex. Civ. App. - Galveston 1949, writ ref'd). An employee does not have sovereign functions to be exercised independently. His duties are assigned by others; his work is subject to their supervision and control. He is unlikely to exercise powers or have duties which conflict with an officer's powers and duties.

When an officer accepts a second incompatible office, he is deemed to have resigned the first. Thomas v. Abernathy County Line Independent School District, supra. This remedy highlights the difference between a public officer and a public employee. A public officer can relinquish the duties of his office only by relinquishing the office. See McGuire v. Hughes, 452 S.W.2d 29 (Tex. Civ. App. - Dallas 1970, no writ). An employee, in contrast, may carry out functions which appear to conflict with an officer's duties, but the employee may be able to change functions through reassignment without relinquishing his employment.

An employee is most likely to have a conflict with the officer or officers to whom he is directly accountable. Compare Attorney General Opinion MW-450 (1982) with Attorney General Letter Advisory No. 114 (1975). Officer-employee incompatibility is the second kind of incompatibility, where "[s]ubordination is the key word." Haskins v. State, supra. The officer's legal duties to the public do not conflict with the employee's duties. Instead, the employee's personal interest in his employment conflicts with the officer's duty to serve the public. Cf. art. 6252-9b, §8(c) (no state officer should accept employment which could impair his independence of judgment in the performance of his official duties).

We turn to the employees you inquire about to examine the legal relationships between them and the State Board of Education. Certified public school employees, such as teachers, counselors, and administrators, are subject to the direction and control of the local board of trustees. Educ. Code §23.26; see also Educ. Code §§13.101-13.117 (employment of teachers by school board). The State Board of Education exercises administrative, policy-making and rulemaking powers which affect public schools and their employees. See, e.g., Educ. Code §§11.18(c) (adult education programs); 11.26 (policy-making and budgetary powers affecting public schools); 11.26(c)(5), 11.36(a), 21.751-21.757 (added by H.B. No. 72; see Acts 1984, supra, at 403-05) (school accreditation); 16.056 (board approval of policies for implementing Texas Public Education Compensation Plan). However, school employees are, as a general matter, only indirectly affected by the State Board's exercise of most such powers; school employees remain directly subordinate to the local board. Any conflicts between the State Board and a local board are relevant to incompatibility between State Board members and school trustees, not school employees.

The provisions on certification, however, may cause conflicts between the State Board and some certificated personnel. The State Board administers the issuance of certificates. Educ. Code §13.032(a). Among its other responsibilities, the board is to prescribe competency exams for applicants for certification. Educ. Code §13.032(e). Teachers and administrators who did not take a certification examination are required to perform satisfactorily on "an examination prescribed by the board as a condition to continued certification. . . ." Educ. Code §13.047(a) (added by H.B. No. 72; see Acts 1984, supra, at 368). The State Board may exempt persons who perform satisfactorily on an exam of equal difficulty given by the employing district. Educ. Code §13.047(g) (added by H.B. No. 72; see Acts 1984, supra, at 369).

These provisions raise the possibility that a certified teacher serving as a State Board member might have to prepare an examination which he is required to take. We do not believe these provisions create an incompatibility between the two positions. The State Board might decide to use an examination prepared by a testing service rather than preparing questions itself. See Attorney General Opinion M-78 (1967). Some certificated persons are not required to take the examination. The conflict is not inherent in the employment status, but instead is a conflict that some individual public school employees may have. If this conflict actually arises, the certificated member may need to choose between remaining on the board and taking the exam. The conflict is not, however, insuperable. We are not compelled to conclude that common law bars certificated personnel from serving on the State Board.

You next inquire about junior college faculty and administrators. As already discussed, the State Board has some authority to regulate

the adult education and vocational education programs offered by junior college districts. In our opinion, the board's administrative and rulemaking powers do not create incompatibility between board members and junior college teachers and administrators. The junior college personnel do not have statutory duties which conflict with the duties of board members. They are accountable to the junior college trustees, not to the board. Even though junior college personnel are indirectly affected by board powers, we do not believe they have the kind of insuperable conflict which constitutes incompatibility.

You next inquire about senior college or university faculty and administrators, particularly those involved in teacher education programs. We will deal only with the Education Code provisions on teacher education. See generally Educ. Code, ch. 61 (Coordinating Board, Texas College and University System). The board establishes standards for approving teacher education programs at colleges and universities. Educ. Code §13.032(a). If the Commissioner of Education determines that a teacher education program fails to meet the Board's standards, he first notifies the chief administrator and any regents' accreditation committee in confidence. Educ. Code §13.033(a) (added by H.B. No. 72; see Acts 1984, supra, at 378-79). If the deficiency is not corrected, the commissioner is to give the regents public notice and finally recommend that the State Board place the program on probation. Id.

Section 13.033(a) of the Education Code gives the chief administrator of teacher education programs an opportunity to correct deficiencies in the program. If deficiencies are not corrected, the board may impose the sanction of probation and ultimately revoke its accreditation. The chief administrator and the board have conflicting interests and responsibilities. The employer must correct deficiencies in his program and no doubt has a strong interest in its continued operation without public sanctions. The board member must enforce compliance with its standards, even by revoking the program's accreditation if necessary. We believe the common law doctrine of incompatibility may reasonably be extended to bar the chief administrator of a teacher education program from serving on the board.

## EDUCATION SERVICE CENTER EMPLOYEES

You next inquire about regional education service center employees. Under section 11.32 of the Education Code, the board provides by rule and regulation for the establishment and operation of centers to provide educational services to school districts and to coordinate educational planning in the area. Each center is governed by a locally appointed board of directors, which has statutory authority to employ necessary personnel. Educ. Code §11.32(d). The employees of the centers are hired by and accountable to the local board of directors. The State Board's rules for operating the center necessarily affect employees, but they do not make employees

immediately subordinate or accountable to the board. Nor do they raise a question of conflicting legal interests, although certainly an employee's ideas about education may be influenced by the nature of his employment. Common law incompatibility does not prevent his service.

## EDUCATION AGENCY OFFICERS AND EMPLOYEES

You have inquired about officers and employees of the Central Education Agency. However, we have been informed that no officer or employee of this agency has been nominated to the governor. Therefore, we do not believe it is necessary to address this question at this time.

This opinion is limited to the specific offices, employments and Education Code provisions discussed. As already noted, some incompatibility questions can only be resolved after examining detailed information about an individual's legal powers and duties. House Bill No. 72 enacts substantial changes in the Education Code, and has not yet been interpreted in administrative constructions or judicial decisions. Future interpretations of this law may raise questions about incompatibility not considered here or suggest reasons for exceptions to some of our answers to your questions. Such questions must be resolved on a case by case basis with reference to the general principles stated here.

## S U M M A R Y

The common law doctrine of incompatibility bars school trustees, junior college trustees, and certain college and university regents from serving on the transitional State Board of Education established under House Bill No. 72, Acts 1984, 68th Leg., 2nd C.S., ch. 28, at 269. Certain employees of educational agencies who are directly subordinate to or accountable to the board are barred by the common law doctrine from serving on it. This opinion is limited to the offices, employments and Education Code provisions discussed in it.

Very truly yours,

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Susan L. Garrison
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Colin Carl
Susan Garrison
Jim Moellinger